[NEW YORK SPECIAL TERM, July 8, 1857. *Peabody,* Justice.]

## TRAVIS *vs.* BARGER.

Where, upon the trial of a cause, objectionable testimony is given, in answer to a question which is not objected to, and which does not necessarily call for any such evidence, and the judge immediately declares the testimony inadmissible, and in his charge to the jury directs them to disregard it, the giving of such testimony affords no ground for granting a new trial.

In an action by a father, for the seduction of his daughter, an agreement in writing between the defendant and the daughter, by which the defendant admits the seduction, and agrees to pay her a sum of money, and the daughter releases and discharges him from all actions for damages, and claims of every kind, is admissible in evidence, not for the purpose of showing the extent of the injury which the defendant has inflicted on the plaintiff, or the amount of damages to which the latter is entitled, but as an admission by the defendant of the facts necessary to be proved by the plaintiff, in order to maintain the action. S. B. STRONG, J., dissented.

Where matters offered in evidence by the defendant furnish a complete bar to the plaintiff's action, they must be pleaded. If, however, instead of being a complete defense, they go only to the extent of his recovery—to the amount of his damages—they may be given in evidence without having been pleaded.

An action cannot be maintained, by a father, for the seduction of his daughter, if his own wrongful act, or omission, co-operated with the misconduct of the defendant, to produce the damages sustained.

Proof that the plaintiff knew of the improper intercourse between his daughter and the defendant, when it took place, and did not interfere to prevent it; or that he connived at the intercourse, and consented to his daughter and the defendant being together and having such intercourse, after it came to his knowledge, is a bar to an action by the father, for the seduction of his daughter, *per quod servitium amisit.*

But if those facts are not set up in the answer, as a defense, nor offered in mitigation of damages, but are offered to be proved on the ground that they will furnish a complete defense to the action, the evidence is inadmissible. S. B. STRONG, J., dissented.

Travis *v.* Barger.

Where evidence, offered to be given, as a defense to the action, is excluded by the judge, on the ground that it is not warranted by the pleadings, the party should offer it again, in mitigation of damages, if he wishes to avail himself of it, for that purpose.

The proper place for deciding upon the propriety of an amendment of the pleadings is at the circuit, where the parties, and their witnesses, are before the court, and where the good or ill faith of the application can be investigated. An application for leave to amend is addressed to the sound discretion of the judge; and his decision upon it will not be reversed, on a motion for a new trial, except in a clear case. There must be some proof that the defense proposed to be set up by the amendment is true, and can be sustained.

Where, in an action for seduction, the jury found a verdict for the plaintiff for $3000, the court refused to grant a new trial on the ground of excessiveness of damages.

THIS was an action brought by the plaintiff against the defendant to recover damages for the seduction of the plaintiff's daughter, Temperance S. Travis. The complaint charged that at the time of the seduction the said Temperance was the servant of the plaintiff, and further charged, on information and belief, that in the month of February, 1854, and on divers other days and times between that time and the commencement of said action, at Putnam Valley, Putnam county, the defendant, wrongfully intending to injure the plaintiff and to deprive him of the services of his said daughter and servant, debauched and carnally knew her, whereby she became pregnant and sick with child, and was afterwards, and on or about the 7th day of December, 1854, delivered of a child at the plaintiff's house at the place aforesaid, where she remained during her sickness, and was nursed and taken care of at the plaintiff's expense; by reason of which premises the plaintiff lost the services of his daughter, and necessarily expended considerable sums of money in taking care of her, whereby the plaintiff was injured and sustained damages to the amount of $5000, for which sum the plaintiff demanded judgment. The answer denied, upon information and belief, that the said daughter was at the time of the alleged seduction the servant of the plaintiff, and it further denied that with intent to injure the plaintiff, or deprive him of the services or assistance of the said Temperance, he debauched or carnally knew her at any time; and whether said Temperance became

pregnant by the defendant, the answer alleged that he, the defendant, had no knowledge or information sufficient to form a belief, but denied upon information and belief that she was nursed or taken care of at the plaintiff's expense. The answer was verified.

The cause was tried at the circuit in Putnam county, in October, 1855, before Justice BROWN, and a jury. The plaintiff's daughter, Temperance S. Travis, was examined as a witness for the plaintiff, and testified to the seduction and subsequent birth of the child, of which the defendant was the father. At the time of the seduction she was about 22 years of age, and resided at her father's house. Among other things, she testified that about a month after the last intercourse she made her condition known to the defendant; told him he had made trouble for her, and wished him to do as he said, and marry her. The defendant's counsel objected to any evidence tending to prove a promise of marriage. The judge held such evidence to be inadmissible, and stated that he should instruct the jury to disregard it. The witness testified to the execution of a paper by her and the defendant, purporting to be a "settlement and cash payment in full," between them, dated June 15, 1854, after the birth of the child. The defendant's counsel objected to this as improper and irrelevant evidence; but the judge admitted it, and the defendant excepted. This paper is sufficiently described in the opinion of the court. The plaintiff having rested, the defendant's counsel offered to prove that the plaintiff knew of this intercourse between the defendant and his daughter when it took place, and did not interfere to prevent it. Also, that he connived at the intercourse, and consented to the defendant and his daughter being together and having such intercourse, after it had come to his knowledge. This evidence was objected to, because such matters of defense were not set up in the answer, and because the defendant had not denied the seduction in his answer, and because that part of said offer which related to the offer of the defendant to marry was not proper. Objection sustained, and decision excepted to. The defendant's counsel then moved to amend the

Travis *v.* Barger.

pleadings in terms so as to permit said evidence to be received, which being objected to was denied by the court. Decision excepted to. The judge then charged the jury, among other things, to disregard the evidence tending to prove a promise of marriage. The jury, after deliberation, found a verdict for the plaintiff for $3000.

The defendant subsequently made an affidavit, stating that after his answer was put in, he was informed that, at divers times, previous to his alleged connection with the plaintiff's daughter, she had had sexual intercourse with various other persons; and that the intercourse between her and the defendant was known to, encouraged and permitted by, the plaintiff. That those facts came to the defendant's knowledge only a few days before the trial, and too late to give notice of motion for an amendment of his answer. That since the trial, the defendant had learned that he could prove substantially the same facts by other witnesses than his informant, and of which facts he had no knowledge or information until since the trial. And that in case of a new trial, he expected to prove the facts embraced in the proposed amendments to his answer. Upon this affidavit the defendant moved, at a special term, for leave to amend his answer, so as to set up the above facts as a defense, and for a new trial. The following opinion was given, upon deciding that motion.

BROWN, J. "This cannot be regarded as a motion for a new trial upon the ground of newly discovered evidence, because the evidence was known to the defendant before and at the time of the trial, and was in fact offered and rejected. The motion must therefore depend upon the power and duty of the court to allow an amendment to the answer, with a view to the reception of the evidence, which involves the right to a new trial.

The action is for the seduction of the plaintiff's daughter and servant. The answer put in was a denial of the sexual intercourse charged. Upon the trial the defendant offered to prove that the plaintiff connived at and consented to the intercourse; which evidence was rejected, because no such defense

Travis *v.* Barger.

was set up in the answer. It will be seen that this defense is in bar of the action, and changes the issue entirely; for while the general denial puts in issue the fact of the sexual intercourse, the evidence proposed admits the fact of the intercourse, and sets up in bar connivance and consent.

The first and most serious obstacle in the way of the defendant's motion is this : He knew of the existence of this ground of defense before the trial. It is true it was not known until after the case was noticed for trial, and too late to move for leave to amend the answer. When its existence first became known does not appear, because the defendant does not state. It was not so late, however, that the defendant could not have obtained an order to show cause, on the first day of the circuit, why the answer should not be amended upon terms just to the plaintiff. Had such an order been obtained, and sufficient grounds for the application had appeared, there cannot be a doubt but that the court would have required the plaintiff either to consent to the amendment and proceed to trial, or have postponed the trial, upon terms, to the next circuit, in the event of the plaintiff's refusal to consent to the amendment of the answer. In this form justice might have been done to all parties. But in place of this, the defendant proceeds to trial as if his pleadings were all right, offers his evidence, which his counsel knew would be rejected, takes the chance of a verdict favorable to himself, and when it turns out unfavorable, claims to amend, have a new trial, and take the chance of another jury for a more favorable verdict. Had he made an effort to postpone the trial, with a view to amend, or to be permitted to amend before the trial, and failed, he would have been in the attitude of one who had used all the diligence in his power, and his present motion would have stood on grounds of equity and justice, which it would be difficult to resist. Having omitted, either intentionally or inadvertently, to make any effort of the kind, he could not be allowed to take the chance of another trial, without the clearest injustice to the plaintiff.

I may also notice another difficulty which appears upon the face of the defendant's papers. A motion to amend a pleading and for

Travis *v.* Barger.

a new trial after verdict should not be granted, unless all doubt of the existence of the fact sought to be introduced into the pleadings is removed. There should, at least, be the affidavit of some one that the fact exists ; so that the court may be sure that the facts relied upon will be made out prima facie upon the trial. In the present case there is no evidence that the defendant will be able to make out the defense of connivance, or that any such defense really exists, except the information and belief of the defendant. For any thing that appears upon the motion papers, except the hearsay of others, there is no such defense; and it may well be that if a new trial was granted and leave to amend given, no other result would follow but another jury passing upon the question of the plaintiff's damages."

The motion was, for these reasons, denied ; and the defendant appealed to the general term.

*Ferris & Frost,* for the plaintiff.

*Nelson & Coffin,* for the defendant.

BIRDSEYE, J. The evidence to which the counsel of the defendant objected as tending to prove a promise of marriage, was given in answer to a question which was not objected to, and which did not necessarily call for any such evidence. The part complained of was only a portion of a sentence, and stated a conversation between the witness and the defendant. As soon as the objectionable matter had been stated, the presiding judge declared it inadmissible ; and he then, and also in his charge to the jury, directed them to disregard it. To make this answer of the witness the ground for granting a new trial, would render it necessary to set aside the verdict in every case where a witness for the prevailing party had stated matters not responsive to the questions put to him, and not admissible as evidence in the cause.

The only other objection to the evidence, taken at the trial, was to the reading of the agreement of June 15th, 1854, between the defendant and the plaintiff's daughter, for the seduction

of whom the action was brought. The seduction had taken place in the month of February previous. The defendant was informed of the pregnancy of the witness, in the month of March or April. In June he called at the plaintiff's residence, and saw the witness, in the absence of her parents. He then induced her to sign the agreement in question, he executing it at the same time. By this agreement, after reciting that the parties had disagreed in one point only, it was agreed to settle that point and all other matters of difficulties, accounts, &c., actions of or for damages or claims for damages of any kind, promises or breaches of promises of any and all kinds whatsoever, which had any foundation previous to the date of the agreement and settlement. The agreement then contains a discharge by the plaintiff's daughter to the defendant "from all actions in law, equity or otherwise, as above named or alluded to, *for either legitimacy or illegitimacy.*"

The defendant induced the daughter to sign this paper, which she did not read, by assuring her he had brought it there to show her father that he, the defendant, intended to do as he had said; and when urged to do as he had said, he replied that he intended to do so, but that he had a house to fix, so that they would have somewhere to go. After the paper had been signed by the parties to it, the defendant induced the plaintiff's son to sign it as a subscribing witness, by falsely representing it to be *his will.*

The defendant, by his answer, had traversed the allegations of the complaint as to his debauching and carnally knowing the plaintiff's daughter, and as to her becoming pregnant by him. The proof of each of those facts was essential to the maintenance of the plaintiff's action. The defendant had entered into a written agreement with the plaintiff's daughter, whom he thus denies he had seduced, by which she, at his request, released him from all actions, either for legitimacy or *illegitimacy.*

As the evidence of the person seduced is always more or less open to suspicion, or criticism, in actions like the present, I think that where the defendant chooses to furnish proof, under his own hand, of the truth of the charge against him, it is ad-

Travis *v.* Barger.

missible in evidence; not for the purpose of showing the extent of the injury which he had inflicted upon the plaintiff, or the amount of the damages to which the plaintiff was thereby entitled. If there were no other grounds than these for receiving this evidence, I do not see how this verdict can stand. But the proof, in my opinion, went to sustain the plaintiff's right of action itself. Taking the whole paper together, it seems to be an admission by the defendant, over his own signature, of the very facts which he has denied in his answer, and which the plaintiff was required to prove, to entitle himself to a recovery. That such proof was cumulative; that the same facts had been already established by the plaintiff, when this agreement was read to the jury, did not render the evidence incompetent. Nor can the defendant complain, if this proof, competent for another purpose, was of such a character that a jury might naturally deem it rather an aggravation of his offense. The evidence of the defendant's acts and representations in respect to this agreement was received at the trial without objection, and was not complained of at the argument before us, and cannot properly form any reason for granting a new trial.

After the plaintiff had rested his cause, the defendant made two offers of proof, which were objected to and excluded. It is upon these rulings that the principal question in the case arises. The first offer was to prove that the plaintiff *knew* of the intercourse between his daughter and the defendant, *when it took place, and did not interfere to prevent it.* The other offer was to prove that the plaintiff connived at the intercourse, and consented to the defendant and his daughter being together and having such intercourse, after it had come to his knowledge. These offers were made, it is clearly apparent, upon the ground that the proof would furnish a complete defense to the action, and not merely that it was admissible in mitigation of damages. The judge decided upon the question which was thus presented to him. If he was in error, there must be a new trial. But if he committed no error, it is difficult to see what ground of complaint the defendant has. He attempted

to sustain by evidence a defense which the pleadings did not warrant. The court excluded the proof, to make out this defense; and rightly so. Instead of offering it again for the purpose of mitigating the damages, for which purpose alone it is now contended it was admissible, instead of presenting to the judge the point upon which alone it is now contended that he erred, and calling his attention specifically to it, so that it might have been passed upon, the defendant chose to let the case be submitted to the jury. And he now raises the question in such a manner that, if successful, he has a chance with another jury, although there was no error committed at the former trial, either in the admission of testimony or the decisions of the court. Such a course ought not to be permitted. It is likely to put the court in a false position, and to work injustice to the opposite party. The party complaining of the charge of the judge, which is claimed to be erroneous in part only, and in part correct, is required to call attention specifically to the matter complained of, so that the error, if any, may be forthwith corrected. The same principle, in my opinion, applies in a case like the present.

But I think that if the proof had been offered merely in mitigation of damages, it would have been properly excluded; and that no error, therefore, happened at the trial, even if we are at liberty to give to the offers actually made, a construction so liberal as to hold that they did present this question distinctly for decision.

It will not be seriously contended, I imagine, that if the defendant has matters of defense which constitute a complete bar to the action, he may abstain from pleading them, keep them from the knowledge of the plaintiff till he has rested his case, and then prove those facts, and thus reduce the damages to sixpence, while his opponent is practically deprived of all opportunity to controvert that which has in effect defeated his recovery, and left him to pay his own costs. And yet, if I understand the counsel for the defendant, this is the direct and necessary result of his argument. If it be the rule of law, I have yet to learn it. Certainly, it is not established in

the learned and able opinion of Mr. Justice Selden, in *Bush* v. *Prosser*, (1 *Kern.* 361, 365,) which is the only authority cited for the position.

I take the rule to be this: where the matters offered in evidence by the defendant furnish a complete bar to the plaintiff's action, they must be pleaded. If, however, instead of being a complete defense, they go only to the extent of his recovery—to the amount of his damages—they may be given in evidence without having been pleaded. For the rules of pleading did not allow them to be spread upon the record. It is only of such matters that Mr. Justice Selden was speaking in the opinion above referred to. That was an action for slander. And in such an action the legislature had interfered, by express enactment, (*Code*, § 165,) to allow mitigating circumstances to be set up, by way of defense, in the answer. The question is then presented, whether the matters embraced in these two offers did or did not constitute a complete defense to the plaintiff's action; or whether, admitting them to be true, the plaintiff was still entitled to recover something, but a smaller sum, owing to these matters.

The case of *Seagar* v. *Sligerland*, (2 *Caines*, 219,) was precisely like the present one. But it appeared, upon the plaintiff's own testimony, that he and his wife knew their daughter and the defendant had slept together at their house, without forbidding or discountenancing the intercourse. The court said that the plaintiff should have been nonsuited; and that there ought to have been a verdict for the defendant. That in actions of this nature, the daughter is supposed to be violated with force, against the will and consent of the father; and it is then, and then only, that he is entitled to compensation for the loss of her services. But when he consents, or connives at the criminal intercourse, he seeks, with a very ill grace, a retribution in damages. The court also say that parents who countenanced, or took no pains to abolish, at least within their own walls, a practice so indecorous and dangerous as had been proved in that case, had no right to complain, or to ask satisfaction for consequences which must so naturally follow from

it. And it was held that, in such a case, no damages at all could be given, and that the action could not be maintained.

The same rule, in substance, was repeated in *Akerley* v. *Haines*, (*id.* 292,) except that it is clearly implied there, that connivance would prevent the plaintiff from recovering, as well for the expenses of confinement as for the loss of service. (*See also Fletcher* v. *Randall*, *Anthon's N. P.* 267.) · Lord Kenyon acted on the same rule in *Reddie* v. *Scoolt*, (1 *Peake*, 240.) And the rule itself is adopted in 2 *Greenl. Ev.* § 578, where such evidence is said to be a bar of the action.

In the action for a criminal conversation, which is kindred to the present one, in its main features, (5 *Cowen*, 120,) the same principle has long .been applied; although there is one loose nisi prius case, (*Cibber* v. *Sloper*, *Buller's N. P.* 27,) in 1756, where the action was held to lie, though the privity and consent of the husband, to the defendant's connection with his wife, were clearly proved. (*See Selwyn's N. P.* 9, *note* 4, 4*th ed.*) But it is now uniformly held to be essentially necessary that the plaintiff should present himself in court with clean hands, that is, without any imputation of having courted his own dishonor, or having been instrumental to his own disgrace; and if the husband has consented to, or provided means for, the adulterous intercourse, the ground of the action is removed.

In *Duberley* v. *Gunning*, (4 *T. R.* 651,) Lord Kenyon had charged the jury that if the husband had consented to the infidelity of his wife, it took away altogether the ground of his action, and they should find a verdict for the defendant; but if the plaintiff had not gone to that length, yet had been guilty of gross negligence or inattention to her conduct, with respect to the defendant, that would go far in mitigation of damages. The jury found for the plaintiff, with £5000 damages. All the judges held the charge to be correct. And in this view all the authorities agree. (*See Selwyn's N. P.* 8, 9 ; 2 *Greenl. Ev.* § 51 ; 1 *Stephen's N. P.* 9, *and the cases cited in these several books.*)

The rule cannot be better stated than it is by Greenleaf: " *Passive sufferance or connivance* of the husband, may be

Travis *v.* Barger.

shown in bar. But mere negligence, inattention, confidence or dullness of apprehension, are not sufficient for this purpose; there must be passive acquiescence and consent, with the intention and in the expectation that guilt will follow." (2 *Greenl. Ev.* § 51.)

In my opinion, these principles are as just and true, and as properly applicable to the present action, as if the plaintiff had been suing for an adultery with his wife. It is admitted, I understand, that they do apply to this action, so far as the plaintiff seeks to recover compensation for his loss of the comfort of the society of a virtuous daughter, and for the injury to his feelings by reason of her degradation and the consequent disgrace of himself and family. But if the plaintiff, by his own wrongful conduct, has so far brought about the act for which he sues, as to be precluded from recovering damages of one sort, how can he recover those of another? He obtains damages by reason of the loss of service, or the expenses of the lying-in, because they are the direct, natural result of the wrongful acts of the defendant. For the same reason, and solely upon the same ground, he is allowed to recover for the injury to his feelings. The one is not more the result of the defendant's illegal acts than the other. Such complicity by the plaintiff, in the defendant's wrong doing, as will bar a part of the damages properly recoverable, will bar all damages. If the plaintiff knew of the criminal intercourse of the defendant with his daughter, and consented to it, or did not interfere to prevent it, he must have known as well that sickness and expense and loss of service would result from it, as that public disgrace would follow. As Lord Kenyon said, in *Duberley* v. *Gunning*, if such a man could recover a verdict, the very source and first principles of justice would have been contaminated. It may be a new application of the familiar principle, but I believe it is a proper and just one, to say that no party can ever maintain an action like the present, if his own wrongful act or omission co-operated with the misconduct of the defendant, to produce the damages sustained.

It is only necessary to compare the offers made by the defendant, with the rule above stated, to see that they were

properly overruled. The first offer was to show that the plaintiff *knew* of the criminal intercourse between the defendant and his daughter, *when it took place*, and did not interfere to prevent it. I can hardly imagine a more direct and express consent to the criminal act than is involved in this offer. If it differs, in a moral point of view, from the acts of the procurer, I cannot perceive the distinction. The other offer was to prove the plaintiff's connivance at the intercourse, and his consent that it should continue, after it had come to his knowledge.

Both these offers seem to me to be offers merely to show that the plaintiff's action arose *ex turpi causa ;* from such a violation by the plaintiff of every principle of purity and sound morals, that no court could sustain the suit, without sanctioning the vice. For if such conduct of the parent did not amount to vice itself, there is no such thing as being accessory to crime. To say that such evidence as this is not of a character which would bar a recovery, but that it was only admissible to induce the jury to assess the damages in shillings or pence, instead of dollars or hundreds of dollars, is to overlook all substance and principle, and to administer justice upon distinctions subtler than those of the schoolmen. For my own part, if these offers were true, I would say, with Chief Justice Wilmot, "No such polluted hand shall touch the pure fountains of justice." (2 *Wilson*, 350.)

After these offers of the defendant had been overruled, the defendant's counsel moved for leave to amend the pleadings so as to permit the evidence objected to to be received, which being objected to, was denied by the court. To which decision the defendant excepted. This offer, it may be remarked, shows that, at the circuit, the counsel for the defendant did not· take the unsound position now assumed, that the evidence offered was admissible to mitigate the damages.

The application for leave to amend is addressed to the sound discretion of the court. That the exercise of that discretion at the circuit is not subject to review here, is more than I am willing to admit. But before we should reverse the action of the judge at the circuit, whether he allowed or refused the amendment, much more must be shown than this case presents.

Travis *v.* Barger.

The proper place for deciding upon the propriety of an amendment is at the circuit, where the parties and their witnesses are before the court, and where the good or ill faith of the application can be investigated. That investigation we have here no means of making. One fact which does appear in the case, however, is singular, and to my mind is conclusive upon this question. When the plaintiff rested, the defendant, instead of proceeding in the ordinary way to open his case and call his witnesses to the stand and elicit their testimony, made his general offers above adverted to. When they were rejected, instead of offering to show gross negligence or inattention by the plaintiff to the morals or conduct of his daughter, which proof would doubtless have reduced the damages very much, the defendant, after this unsuccessful effort to amend, suffered the case to go to the jury. The judge may have been, and I presume was, satisfied that the offer was merely intended to produce an effect upon the minds of the jury, and that the defendant was not acting in good faith either towards the court and jury, or towards his own counsel, or the plaintiff, and had no witness to sustain any part of his sweeping offers. He does not now produce the affidavit, or even give the name, of a single witness who, if a new trial and leave to amend his answer are allowed him, will testify to a single fact in support of the defense. Certainly, the party who seeks to overturn a verdict against him in this manner, ought to make it appear beyond cavil that he is not merely playing a trick upon the court.

For these reasons, I think the learned judge who tried the cause rightly denied the motion made before him at special term.

The defendant's counsel contended, with much zeal, that, considering the situation and rank of the parties, the damages were excessive, and therefore a new trial should be granted. He did not, however, refer us to a single instance where the court had ever thus interfered in favor of the seducer in an action *per quod*. Judges have often intimated, however, in actions for adultery, that they would interfere, if a case properly required it. And in *Akerley* v. *Haines*, (2 *Caines*, 293,) there is

an intimation that the same might be done in this class of actions. In the case of *Duberley* v. *Gunning,* (*ubi supra,*) the jury had found a verdict for the plaintiff for £5000 sterling. There was such evidence of the husband's connivance, that Mr. Justice Buller was for setting the verdict aside as clearly against evidence on that point; and he thought the damages so excessive that there should be a new trial. Lord Kenyon thought the damages a great deal too much; nay, he said he would have been satisfied if only nominal damages had been given. Ashurst, J. thought the verdict was properly given for the plaintiff. And Grose, J. could not say that the jury had done wrong in finding for the plaintiff. Yet all three declined to interfere with the verdict then before them, though distinctly admitting that the damages were enormous. The reasons upon which they based their judgment seem to me unanswerable, and decisive of this case. Lord Kenyon said he had not courage enough to make the first precedent of granting new trials under circumstances such as were then before him. But only the next year, in *Jones* v. *Sparrow,* (5 *T. R.* 257,) he said that the action for criminal conversation was *sui generis,* and granted a new trial for the excessiveness of the damages in an action for assault and battery, where £40 had been given for a violent beating.

In *Chambers* v. *Canfield,* (6 *East,* 244,) which was also an action for *crim. con.,* the plaintiff had a verdict for £2000. The motion for a new trial was founded on two grounds : 1st. That previous to and at time of the act of adultery proved, the plaintiff and his wife were living apart, under a deed of separation between them. 2d. That the damages were excessive, in a case where the husband had before agreed to a separation from his wife. The fact of the actual separation seems to have been admitted on all sides. (*Pages* 245, 249, 250, 253, 256.) But the court held, (*p.* 256,) upon a critical examination of the provisions of the deed of separation, that, as the actual separation was not to take place *without* the approbation of the trustees named in the deed, which was not shown, the wife was not at the time of the criminal intercourse living apart from her hus-

band' by his consent, and the action would therefore lie.   Upon the second ground, the court refused to disturb the verdict. Though Lord Ellenborough said, if it appeared from the amount of damages given, as compared with the facts of the case laid before jury, that the jury must have acted under the influence either of undue motives, or some gross error or misconception on the subject, the court would have thought it their duty to submit the question to the consideration of a second jury.

The correctness of the rule thus laid down, even as applied to actions like the present, I see no reason for doubting.   There are many instances in our own reports of verdicts which, either relatively or absolutely, were much larger than this one; to some of which this same objection of excessiveness was taken, while to others it was not.   In *Mulvehall* v. *Millward,* (1 *Kern.* 343,) the verdict was for $3000.   It was not complained of as excessive.   So of verdicts for $1000, in 4 *Comst.* 38, and 3 *Selden,* 191.   In *Moran* v. *Dawes,* (4 *Cowen,* 412,) the plaintiff had a verdict, the amount of which is not stated.   In *Graham & Wat. on New Trials,* 420, 2d ed., it is said to have been for $9000.   It was not alleged to have been excessive, on the motion for a new trial—the defendant's counsel on that motion being the late Chief Justice Spencer.   In *Sargent* v. *Denniston,* (5 *Cowen,* 106,) the verdict was for $920.   There was very strong evidence of previous criminal intercourse by the plaintiff's daughter with other men, and the plaintiff's counsel admitted that there was no seduction.   One of the grounds of the motion for the new trial was the excessiveness of the damages.   They were relatively far greater than they are in this case.   But the court refused to meddle with the verdict for this reason, saying the damages were not so flagrantly outrageous and extravagant, as necessarily to evince intemperance, passion, partiality or corruption on the part of the jury; and that, where that is not the case, the court will not undertake to set their judgment on a question of damages, in an action of this nature, in opposition to the judgment of the jury.   The authorities cited' to sustain this proposition fully support it.

Although, as was said in several of the cases referred to,

I should feel better satisfied with this verdict if it were for a less amount, there is no sufficient reason for disturbing it.

The motion for a new trial must be denied, with costs.

BROWN, P. J., concurred.

S. B. STRONG, J. · I think that the receipt and release, in connection with the accompanying circumstances, should not have been received in evidence. They could not have had any legitimate effect, as to the extent of the injury which had been inflicted upon the plaintiff by the seduction of his daughter, and his resulting loss of her services, or the amount of damages to which he was consequently entitled. The evidence was irrelevant; or, if it had any effect, was illegally prejudicial to the defendant.

If the action had been solely for the injury to the feelings of the plaintiff by reason of the direct degradation of his daughter, and the reflective disgrace to himself and his family, probably his alleged connivance would have been, if it had been proved, an entire defense to the action. But he sued for the expenses caused by her pregnancy and delivery, and the loss of her services. Carelessness, or even connivance by him in a course of conduct by his daughter and the defendant, which might, or might not, require such expenses, or produce such loss, would not entirely prevent a recovery against one who had been principally instrumental in effectuating the result. Such carelessness or connivance would go simply in mitigation of damages. A man who connives at the dishonor of his daughter cannot have any refined feelings, nor can her consequent disgrace subject him to any actual degradation. His only losses are such as are supposed to lie at the foundation of the action.

The rule, previous to the code, was that circumstances in mitigation of damages for torts might be given in evidence without being pleaded. It has been supposed that the code has created a change in this respect. But I do not understand that it requires that facts in mitigation of damages shall be stated in the answer in any actions, except possibly in those for

Travis *v.* Barger.

libels and slander. (§ 165.) There is a general provision in another section (§ 150) that the defendant may set forth by answer as many defenses as he shall have. But this, if compulsory, (which it probably is,) would not embrace circumstances in mitigation which do not amount to a defense. A defense, if I understand the term, is a denial, not of the amount of damages, but of the right of action. A partial defense is a denial of one or more of several causes of action. This was not formerly allowed in actions for torts, when there were several others embraced in the same count, which were either admitted or not denied. In an action where a plea of a tender might be admitted, there might have been a defense interposed to the part of a claim which was not admitted. But that was inapplicable to an action for the seduction of a daughter, where there could be no tender of amends. The provision in the code was probably designed to allow a separate defence to be interposed to each cause of action. But that, I conceive, should go to the entirety, and not simply to the extent, of the controverted claim.

The proposed testimony in mitigation of damages should, I think, have been received.

There should be a new trial; costs to abide the event of the suit.

The defendant should be permitted to amend his answer, if he elects to do so, but in that event he should pay all the plaintiff's costs since the original answer was filed.

New trial denied.

[ORANGE GENERAL TERM, July 14, 1857. *Brown*, *S. B. Strong* and *Birdseye*, Justices.]