BAILEY, (IRWIN v.)    See Case No. 7,079.

## Case No. 738.

### BAILEY v. LANSING.

### STEWART v. SAME.

[13 Blatchf. 424;[1] 2 N. Y. Wkly. Dig. 562.]

Circuit Court, N. D. New York.   June 20, 1876.

TOWN BONDS IN AID OF RAILROADS—ISSUE WITHOUT AUTHORITY—RIGHTS OF COUPON HOLDERS.

1. By a statute of New York, the county judge was authorized, on a petition by a specified number of tax-payers, to ascertain, by judicial inquiry, whether the majority of the tax-payers of a town, in number and in taxable property, desired the town to issue its bonds in aid of a railroad company, and, if he ascertained such to be the case, he was authorized to appoint three commissioners to execute and issue bonds in behalf of the town, and invest them in the stock or bonds of the company. On a petition and proofs, the county judge adjudged that the bonds should be issued by a town, and appointed commissioners to do so. Opposing tax-payers obtained a writ of certiorari

¹ [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission. 2 N. Y. Wkly. Dig. 562, contains partial report only.]

for the review by the supreme court of the state of the decision of the county judge. After the writ had been issued, and the commissioners and the company had had notice of it, they executed the bonds and delivered them to the company. The supreme court reversed the judgment. The bonds had interest coupons, and B. subsequently brought suit against the town on some of the coupons. It did not appear how he acquired title to the coupons, or whether he ever owned the bonds to which the coupons belonged, although it appeared that he had the coupons in his possession before they fell due: *Held*, that he was not entitled to recover.

2. The issue of the certiorari suspended the operation of the judgment, and the company acquired no title to the bonds, which they could enforce as against the town.

[Cited in Stewart v. Lansing, Case No. 13,-432.]

3. It appearing that the bonds were issued in fraud of the rights of the town, the burden was upon B. to show that he was a purchaser of the coupons in good faith and for value.

[Cited in Tracey v. Town of Phelps, 22 Fed. 634.]

4. But, certain of the bonds, with their coupons, having come into the hands of E., as a holder of them for value, before maturity, and then having passed to S., it was *held*, that S. was entitled to recover in a suit on some of such coupons, against the town.

[Cited in Stewart v. Lansing, Case No. 13,-432; same case, on appeal, 104 U. S. 508.] [See Lytle v. Lansing, 147 U. S. 59, 13 Sup. Ct. 254.]

5. Various defences overruled, as against S., as a bona fide holder.

6. The reversal of the judgment of the county judge could not invalidate the title of a bona fide purchaser.

[Suits by Manassah Bailey and John L. Stewart against the town of Lansing on interest coupons of certain town bonds. Judgment against Bailey and for Stewart.]

James R. Cox, for plaintiffs.
Milo Goodrich, for defendant.

WALLACE, District Judge. The suit by Bailey is brought upon interest coupons originally attached to bonds issued in aid of the Cayuga Lake Railroad Company, by commissioners appointed for that purpose by the county judge of Tompkins county, under the provisions of the bonding acts of 1869, 1870 and 1871, of the state of New York. Laws 1869, p. 2303; Laws 1870, p. 2049; Laws 1871, p. 2115. These acts authorize the county judge, upon the presentation of a petition by the requisite number of the tax-payers of the county, to ascertain, by judicial inquiry, if the majority of the tax-payers, in number and in taxable property, desire the town to issue its bonds in aid of the railroad, and, if he ascertains such to be the case, authorizes him to appoint three commissioners to execute and issue bonds in behalf of the town, and invest them in the stock or bonds of the railroad company. The county judge having entertained the petition of the tax-payers, and taken proofs, adjudged that the bonds should be issued, and appointed commissioners for the purpose. Opposing tax-payers contested the proceedings, and, pur-

suant to the statute, obtained a writ of certiorari, for the review of the decision of the county judge by the supreme court of the state. Upon review, the supreme court reversed the judgment. This reversal, in legal effect, vacated the entire proceedings taken before the county judge. The certiorari was the common law writ. After it was issued, and notice thereof given to the commissioners, and before the commissioners had taken the oath of office required by law, preliminarily to entering upon the duties of their trust, they executed and delivered the bonds to the railroad company, the latter having full notice of the certiorari and giving to the commissioners a bond of indemnity.

It does not appear how the plaintiff acquired title to the coupons in suit, but it does appear that they were in his possession before they fell due. It does not appear whether or not he ever owned the bonds to which the coupons were originally attached. Upon the facts, I do not think the plaintiff is entitled to recover. The bonds were originally negotiated between the commissioners and the railroad company in violation of good faith. The parties to the transaction were aware that proceedings were pending to annul the authority of the commissioners to issue the bonds. When the certiorari issued, the judgment and the proceedings upon which it was founded were removed to the supreme court, and the effect was, that all proceedings under the judgment, which had not actually been put in motion, would be suspended. The decisions in this state are uniform, that, upon the allowance of a certiorari, the effect of the judgment which it is taken to review, except in the single case of an execution already issued and in the process of being executed, is suspended as to all proceedings under it and as to all collateral matters. The judgment is not even evidence in a case between the same parties. It is as completely suspended as though it had never been rendered. Launitz v. Dixon, 5 Sandf. 249; Conover v. Devlin, 24 Barb. 636. Under these circumstances, the commissioners were no more justified in attempting to issue bonds in behalf of the town than they would have been if their agency had been revoked; and the railroad company, having knowledge of the facts, acquired no title to the bonds, which they could enforce as against the town. The case is not analogous to that where property has been sold under an execution upon a judgment subsequently reversed. I do not intend to intimate, that, if the bonds had been issued by the commissioners after the certiorari, and had come to the hands of an innocent purchaser, the latter would have acquired no title. Although the authority of the commissioners to act as agents of the town was suspended, such a purchaser would acquire the rights of a bona fide holder of commercial paper, and could recover against the principal as though the authority once conferred upon the agent had never been revoked. But, in such case, it would be incumbent upon the plaintiff to show that he had purchased innocently, relying upon the ostensible authority of the agent. Coddington v. Bay, 20 Johns. 637.

These views lead to the conclusion, that, when it appeared that the bonds were issued in fraud of the rights of the defendant, the burden was cast upon the plaintiff to show that he was a purchaser in good faith and for value. He could not rest upon the presumption derived from his possession of the coupons before they became due. Rogers v. Morton, 12 Wend. 484; Smith v. Sac Co., 11 Wall. [78 U. S.] 139.

Judgment is ordered for the defendant, in the suit by Bailey.

The suit by Stewart differs from the one by Bailey, in that it appears that the bonds were pledged as collateral, in February, 1873, to Elliott, Collins & Co., of Philadelphia, and sold by them after consultation with the officers of the railroad company. Elliott, Collins & Co. were holders for value and before maturity, and their sale to satisfy the pledge conveyed their title to the purchaser. Whether the plaintiff was the purchaser from them directly, or not, is not clear; but, however this may be, he succeeds to all the rights of Elliott, Collins & Co., and occupies the position of a bona fide purchaser.

As against a bona fide holder of the coupons, none of the defences interposed are tenable. Most of these defences are unavailing, within the doctrine of Munson v. Town of Lyons, [Case No. 9,935.] The petition upon which the county judge took cognizance of the proceedings for bonding the town was sufficient to call for the exercise of his judicial judgment; and, in an action on the bonds by a bona fide holder, this determination is conclusive.

It is urged, that there was no organized railroad company in behalf of which the town could extend its aid, because the articles of association fail to state the counties through which it is to run, as required by the general railroad act under which it is organized, and specify only the termini of the road. I am utterly unable to appreciate the argument. The road was actually organized, and if, in the manner of its organization, it failed to comply with such provisions of the statute, this could only be taken advantage of by the sovereign power; and after its corporate existence has been recognized by two subsequent acts of the legislature, it would, I think, be too late for the state to assail it.

It is also urged, that the bonds, when issued, were not sealed. I do not stop to inquire whether they were required to be sealed. It suffices that there is no sufficient evidence to show that they were not. The testimony of witnesses, that they do not remember to have seen seals on the bonds when they were delivered, in the absence of

any pretence, even, that their attention was directed to the circumstance whether the seals were on, is entirely insufficient to authorize the conclusion that the offence of forgery has been committed by any one.

It is also urged, that the bonds contravene the statute under which they were issued, because not payable at the time required by it. The act of 1871, does not repeal section four of the act of 1869, but confers the right to issue bonds payable in less than thirty years, and, when thus issued, they are subject to the condition therein imposed. But, the right to issue pursuant to the terms of the first act still exists, and the bonds in suit conform to the terms.

The reversal of the judgment of the county judge by the supreme court cannot invalidate the title of a bona fide purchaser. The bonds had been issued and put in circulation prior to the reversal. The judgment was effectual when they were put in circulation. After they were given currency, no decision of the court could strip them of their negotiable character.

Judgment is ordered for Stewart.