## SUPREME COURT.

HENRY VAN NESS, appellant agt. PETER G. BUSH, resp'dt.

A *referee* on the trial has power to allow an amendment of a pleading under § 173 of the Code.*

The *terms* of an amendment are within the discretion of the court, and the exercise of that discretion is not the subject of review upon exceptions or appeal.

The declarations of a witness, whose testimony has been taken on commission, made subsequent to the execution of the commission, contradicting or invalidating his testimony, cannot be given in evidence, unless the witness has been examined upon the point and an opportunity given him to explain.

It is an essential element of an estoppel *in pais* that the declaration out of which it is claimed to arise, should be made with a view to induce the party to whom it is made to act upon it.

The finding of a referee on questions of fact upon which there is conflicting evidence, is *conclusive*.

*Argued at Schenectady General Term, January*, 1860.
*Decided at Plattsburgh General Term, May*, 1860.

STATEMENT of facts by appellant: 1st. This action is founded upon a promissory note of $200, made by defendant, and payable to Issac Bush, or order, ninety days after date, at the Fort Plain Bank, for value received, and dated July 17, 1852. The note was indorsed by Isaac Bush, and

---

* This is directly in conflict with the following authorities, to wit: *Union Bank* agt. *Mott*, (18 *How.*, 506,) ALLEN, J., where the precise point was adjudicated; *S. C.* 19 *How.*, 114, where the same motion to amend which was decided by the referee, and the order set aside by ALLEN, J., for want of power, was brought before the court, JAMES, J., who decided to grant the motion to amend—being a proper amendment for the *court* to allow. An appeal to the N. Y. general term, (INGRAHAM, MULLIN and E. DARWIN SMITH, Justices,) was subsequently taken from the decision of JAMES, J., on the whole case, and an opinion of the court was given by SMITH, J., (*S. C.* 19 *How.*, 267,) reversing in part the decision of JAMES, J., on another point, but expressly *affirming* the opinion of ALLEN, J., on the point in question. *Woodruff* agt. *Hurson*, (32 *Barb.*, 557,) where the point was again expressly decided by the N. Y. general term, SUTHERLAND, BONNEY and ALLEN, Justices. See also the opinion of GRAY, J., in *Everett* agt. *Vendryes*, (19 *N. Y. R.*, 436,) where it was held that the *court* could not properly amend the pleadings at the trial (§ 173) where such amendment would introduce a wholly new defence in no way suggested by the original answer. This latter view is sustained by the case of *Catlin* agt. *Hansen*, (1 *Duer*, 309,) and *Fagan* agt. *Davidson*, (2 *Duer*, 153.)—REP.

by him transferred to plaintiff about the 12th or 14th of December, 1857.

2d. The defendant's original answer, under oath, Dec. 28th, 1857, " denies the allegation in the complaint, that defendant had not paid said note," &c.

" And the defendant, for a further answer in this action, says that Isaac Bush, named in the note set out in the plaintiff's complaint, was the owner of said note from the time of the making thereof until it arrived at maturity, or about that time ; and that at or about the time of its maturity,    *    *    *    this defendant paid the amount thereof to the said Isaac Bush, and avers that said note became thereby and was then and there wholly paid and satisfied, and still remains so paid and satisfied."

3d. Upon this issue the cause went· to the Montgomery May circuit, 1858, and was there referred to George Yost, Esq. as sole referee—costs to abide the event.

4th. A commission was procured by defendant to take the depositions of Isaac Bush, in Illinois, and the commission was returned to the referee in Oct. 1858.

5th. The cause came on for trial Feb. 28th, 1859, at which time the defendant moved ·for leave to amend his answer so as to aver that the note was an accommodation note, ·made by defendant for Isaac's · accommodation, in which defendant had no interest ; that said note was afterwards indorsed and discounted at the Fort Plain Bank, for Isaac Bush, and paid and taken up by him at maturity, and long after then transferred by him without consideration to plaintiff.

The referee allowed the proposed amendment, and without costs to plaintiff, under plaintiff's objections.

The cause was adjourned to March 14th, 1859.

6th. After the adjournment an amended answer, as allowed by the referee, under the oath of the defendant, was served, as follows :

" 1st. The defendant, answering the plaintiff's complaint

in this action, denies he is indebted to the plaintiff in the sum of two hundred dollars, besides interest upon the note mentioned in the plaintiff's complaint, or any other sum; and denies the plaintiff is the real owner and holder of said note.

" 2d. The defendant answering further says, said promissory note set out in the plaintiff's complaint was made for the benefit and accommodation of one Isaac Bush, and delivered to him as such at the time of the making thereof, and that this defendant had no interest in said note whatever. That defendant further states, upon his information and belief, that said promissory note was afterwards indorsed by the said Isaac Bush and one George Ehle, and discounted at the Fort Plain Bank, and that the money was received by the said Isaac Bush and for his benefit; and that afterwards, at its maturity, said note was paid and taken up by said Isaac Bush, and retained by him, and afterwards, after its payment and after its maturity, was delivered to the above named plaintiff without any consideration paid therefor. And defendant further says that said note came to the possession of the above plaintiff after its maturity, to wit, in the month of November or December, 1857."

7th. The antecedent circumstances in regard to the making, indorsement, transfer, consideration and recognition by defendant of the note, as disclosed on the trial, were substantially that defendant made the note, and Isaac indorsed and transferred it to plaintiff in December, 1857.

8th. Isaac urged the note upon plaintiff, and represented to him that the note was good. Plaintiff objected that there might be offsets against the note enough to overbalance it. Isaac said there was none except an offset on account of about $40 ; that defendant would pay the note if the $40 was allowed, because he could not get rid of it ; that defendant had no objection to the note, only the $40 ;

that he had taken up the note for defendant because defendant had not the money at the time.

9th. About the 15th November, 1857, plaintiff took the note in his possession, but paid no money on it then.

10th. Shortly after that plaintiff saw defendant and demanded the money on the note and showed it to him. Defendant made no objection to the note ; said he had no money.

. 11th. About the 23d of November, 1857, defendant, knowing that plaintiff had the note in his hands, told Milligan that if he got the note it would be all right; and when Milligan asked defendant if there were any claims against the note, he said there were, that he (defendant) had about $40 of claims against it, and desired Milligan to get the note and wait on him for it.

12th. Isaac still urged plaintiff to advance him money on it, and insisted there was no offset except the $40 on account.

Plaintiff afterwards saw defendant and Isaac looking over the $40 account.

Isaac still urged the note upon plaintiff, and plaintiff objected that he did not want the note at all.  Isaac then said " the note was a good note, as good as the wheat," " as good as the bank"; " that he had the note before Mr. · Adams, and he said the note was as good as the bank ;" and appeared provoked when plaintiff doubted.

13th. Finally, between the 10th and 14th of December, 1857, plaintiff paid Isaac for the note, $100 cash, gave him an order on L. Fox for $20, and held an account against him of over a hundred dollars more.

14th. About the 14th of December plaintiff saw defendant and asked him to pay the note or settle it up ; defendant again replied he had no money ; plaintiff then asked him if he had any offsets against the note ; defendant replied " I guess I have"; plaintiff asked what they were ;

and defendant made no reply. When plaintiff told defendant he should prosecute, defendant made no reply.

15th. About the 22d of December, 1857, after the commencement of this action, Isaac claimed to hold the balance above the $100 cash and the order for $20, as a claim against the plaintiff, which claim for the balance of the note he endeavored to sell to the witness Milligan. Defendant was present and said " the claim was good, and that Isaac had a right to sell it."

16th. Finally, on the 28th December, 1857, the defendant makes, under his own oath, his answer to the complaint, wherein he claims, as a defence, the " payment of the note to Isaac," &c., as before stated.

17th. Against this irresistible array of positive evidence the defendant attempts to support his amended defence that the note was an accommodation note, by the deposition of Isaac Bush and his own testimony. But the defendant did not remember anything he said to Milligan or plaintiff as positively testified to by them.

18th. Upon this self-contradicted evidence of Isaac and defendant the referee has based his finding that the note was an accommodation note, &c., and that defendant is not indebted, &c., and ordered judgment for defendant, &c.

From that judgment this appeal is brought.

HENRY C. ADAMS, *for appellant.*

I. The referee erred in allowing the defendant to substitute a new answer under plaintiff's objections stated, because :

1. The issue of payment of the note, presented by the defendant's original answer, was the only issue referred to him under section 270, Code   He had no power to allow a new answer presenting an entirely different issue from the one referred to him and then assume to try that, and order judgment upon it.

We deny that the Code has gone to the romantic length of authorizing the exercise of such a power, even by the court itself. An analysis of § 173 shows that the court may amend any pleading:

1. By adding or striking out the name of any party.

2. By correcting a mistake in the name of a party;

3. Or a mistake in any other respect;

5. Or by inserting other allegations material to the case;

5. Or when the amendment does not change substantially the claim or defence, &c.

The last clause is a complete negative to the power of any court to change upon the trial the substance and nature of an issue to the extravagant extent exercised by the referee in this case.

In *Catlin* agt. *Hansen*, (1 *Duer*, 309,) it was held that evidence could not be given to support a defence different in its entire scope and meaning from that set up in the answer.

It was also held for the same reason, that the answer under the provisions of the Code could not be so amended as to let in the (new) defence : and see BOSWORTH, J., 327.

In *Fagan* agt. *Davison*, (2 *Duer*, 153,) it was held that the judge on the trial of a cause has no power to strike out the only defence made by the answer, and substitute another which is distinct and inconsistent. (OAKLEY, Ch. J.)

2. But if this court shall uphold the decisions of the referee as to the first and second objections, then we insist that he erred as to the third objection which showed the necessity of an adjournment (and that fact was conceded) and the amendment should have been upon payment of costs to that time. (*Chapman* agt. *Webb*, 6 *How. Pr. R.*, 390 ; *Lane* agt. *Beam*, 1 *Abb.*, 65 ; *see Howard's Code, page* 299, *note*.)

It may be claimed that the referee had a discretion as to terms, but we claim that if he had he has palpably

abused his discretion, and his decision is proper matter for review by this appellate court.

The practice has long prevailed of allowing changes of issues upon special motion, if made without delay. And the practice has long prevailed of imposing terms, &c., and with the privilege to the opposing party (if defendant) to withdraw his plea, or (if plaintiff) discontinue his action, without costs. The Code has made no innovation upon this just and equitable rule.

II. The referee erred in allowing the answer to the last interrogatory, which called for evidence tending to the benefit of plaintiff, when the answer was directly against the plaintiff.

1. That portion of the answer in which the witness states that he " wanted to get something out of the plaintiff for the note, but plaintiff said he (the witness) could not collect the note," &c., was clearly irresponsive and injurious to plaintiff.

It tended to show that the plaintiff knew the note was uncollectable of defendant.

2. That portion of the answer in which the witness says " Van Ness never paid me (witness) anything for the note," was also irresponsive and injurious to the plaintiff.

It tended to show that the plaintiff suffered no pecuniary injury in obtaining the note ; or from defendant's pretences and representations touching the validity of the note against him.

3. The referee also erred in allowing the evidence of defendant, " that he was mistaken in his first answer, when he stated that he had taken up the note and had paid the amount to Isaac Bush."

A party cannot be allowed to prove his ignorance or culpability as an excuse against a recovery, and it was especially improper after the plaintiff had called upon him repeatedly in relation to the note and after the defendant

had given acquiescence and credit to the note, as stated by Milligan and by plaintiff.

All this evidence had a direct and injurious bearing against the plaintiff; and even though slight in its effect, still it was error to admit it.

The rule is, that where the error is in the admission of illegal evidence, which bears in the least degree on the result, it cannot be disregarded. (*Worrell* agt. *Parmlee*, 1 *Comst.*, 519; *Williams* agt. *Fitch*, 4 *Smith*, 18 *N. Y. R.*, 546.)

III. The referee erred in excluding the evidence offered by plaintiff to show the conversation between Isaac and the witness Milligan.

1. It was proper to show that Isaac said he had received a consideration from plaintiff for the note.

2. Also that Isaac said that the only objection the defendant had or made to paying the note, was that defendant claimed a small offset to the note.

3. Also that Isaac pretended on that occasion that he had a claim against plaintiff for the balance of the consideration from plaintiff to him, for the note.

All this evidence was proper to contradict the evidence volunteered by Isaac, and other evidence given by him, and also going to show that he was not entitled to credit.

IV. It was shown by positive evidence, that before and after the note was transferred to plaintiff, the defendant recognized the note as valid against him.

He is therefore estopped from any defence against the note.

1. By his silence when he saw it in the hands of a *bona fide* holder who demanded payment; asked information; and threatened to prosecute him.

" Silence is only one mode of making a representation," which may mislead another as to the matter not communicated, and the law of estoppel applies." (*Taylor* agt. *Ely*, 25 *Conn.*, 250.)

" Fraud may be passive as well as active," and the com-

mon law abhors it in any form. (*Roberts on Frauds*, 520, 521, *ch.* v, § 1.)

2. By his admissions, express and implied, and by his open and general conduct, which must be considered as addressed to every one who may have occasion to act upon them. (1 *Greenl. Ev.*, §§ 197–207 ; *Preston* agt. *Mann*, 25 *Conn.*, 118.)

In this case (*Preston* agt. *Mann*) the rule is stated : " In the courts of this country and of England generally the proposition of Lord DENMAN (in *Packard* agt. *Sears*, 6 *A. &* *E.*, 469,) seems to have met with approbation, that ' where one by his own words or conduct wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the time.' ' The word ' wilful' as used in this connection is not to be taken in the limited sense of the term ' maliciously,' or of the term ' fraudulently,' nor does it of necessity imply an active desire to produce a particular impression, or to induce a particular impression, or to induce a particular line of conduct.' ' Whatever the motive may be, one who so acts or speaks that the natural consequence of his words or conduct will be to influence another to change his conduct, is legally chargeable with an intent of wilful design to induce the other to believe him and to act upon that belief, if such prove to be the actual result.' "

This is especially the rule with respect to negotiable paper, for such acts and admissions, express or implied, have a direct legal operation to enhance the credit and advance the circulation of such paper, and upon principles of good faith and public policy the maker is bound by them. ( *See Preston* agt. *Mann*, *supra*.)

V. The finding of the referee that the note was an accommodation note, &c., and his conclusion and order thereon were against law and evidence.

1. We have shown, we think, under Point IV, that defendant was estopped by his admissions, acquiescence and general conduct from either the defence of payment, &c., or that it was an accommodation note, and therefore the report is against the law.

2. The report is against the direct and positive evidence given by the plaintiff (referred to in Point IV) proving that the note was valid against the defendant, and he so recognized it until the trial.

3. The finding that the note was an accommodation note, &c,, has no foundation for reasons already stated, and also because :

a. Isaac Bush was clearly impeached by his own self-contradictions and dishonest conduct, and was contradicted upon material points by the positive testimony of the witness Milligan, the plaintiff, and Miss Hoos ; and his depositions (from which the defendant derived the idea of " accommodation note") should have been wholly disregarded. (1 *Greenl. Ev.*, §§ 461, 462.)

b. The defendant himself stands self-contradicted by his conflicting answers, each under oath, the original of which he stood upon for fourteen months.

He is also contradicted by all the other evidence, showing his acts and general conduct, and that he recognized the note as valid, and not until Isaac's depositions were disclosed did he pretend that the note was an accommodation note.

And his evidence that he did not remember conversations, statements and facts, positively sworn to by other witnesses, all go to prove that his evidence was unsound and should have been disregarded. (1 *Greenl. Ev.*, § 461, 462.)

The report of the referee should be set aside and a new trial granted.

J. GENTER, *for respondent.*

By the court, ROSEKRANS, Justice. The defendant, in his original answer, put in issue : first, the transfer of the note mentioned in the complaint; secondly, averred that the payee was the owner of the note until its maturity, and that while he was such owner and before it was transferred to the plaintiff, the defendant paid it to the payee.

On the trial he applied to the referee to amend his answer, by setting up that the note was made by him for the accommodation of the payee, and was taken up by the payee at maturity, and was subsequently delivered by the payee to the plaintiff, without consideration. The referee allowed this amendment without costs.

I. The plaintiff insisted that the referee had not the power to allow the proposed amendment; that it changed the substance and nature of the defence, and was wholly inconsistent with the original answer. The objections were overruled, and the plaintiff excepted.

We think the objections were properly overruled.

The 173d section of the Code provides that the court may, before or after judgment, in furtherance of justice and on such terms as may be proper, amend any pleading by correcting a mistake in any respect, or by inserting other allegations material to the case.

This language would seem to remove all restrictions upon the power of amendment of pleadings upon the trial in cases in which it is made to appear to the court that the amendment would be in furtherance of justice.

This was the construction given to this section by HAR-RIS, J., in the case of *Beardsley* agt. *Stover*, (7 *How. Pr. R.*, 294.) In *Harrington* agt. *Slade*, (22 *Barb. R.*, 161,) the general term in this district held substantially the same doctrine. PAIGE, J., says that " under the old chancery practice amendments of answers and leave to put in supplemental answers were granted with great caution ; that the defendant was not allowed to put in a supplemental answer contradicting the statements in the first answer,

but that amendments were now granted with more liberality, and that under the provisions of the Revised Statutes and the Code it is the duty of the court to allow amendments in furtherance of justice upon such terms as shall be just and proper."

The cases of *Catlin* agt. *Hansen*, (1 *Duer*, 309,) and *Fagan* agt. *Davidson*, (2 *Duer*, 153,) so far as they conflict with this construction of the 173d section of the Code, are not, in our opinion, correct.

The court of appeals, in the case of the *Cayuga Co. Bank* agt. *Warden*, (2 *Seld. R.*, 22–27,) held that an amendment without costs was an amendment " upon such terms as may be proper within the meaning of the section referred to."

The terms of an amendment are by this provision clearly within the discretion of the court, and the exercise of that discretion is not the subject of review upon exceptions or appeal.

The 272d section of the Code gives a referee the same power to allow amendments to any pleading as the court upon a trial, upon the same terms and with the like effect.

II. There is no force in the plaintiff's objection to the answer of Isaac Bush to the last direct interrogatory. That interrogatory asked the witness " if he knew or could state any other matter or thing material to the subject of his examination, or which might tend to the *benefit of plaintiff*." The answer was responsive to the first branch of the question, and was material to the issue tendered by the amended answer, which alleged that the note was delivered by the payee to the plaintiff without consideration ; and also to the issue tendered by the first answer, that plaintiff was not the real owner and holder of the note.

III. The referee properly excluded the evidence offered, of the declarations of Isaac Bush, that he had received a consideration for the note from the plaintiff.

The testimony was offered for the purpose of contradicting the testimony of Isaac Bush and to affect his credi-

Van Ness agt. Bush.

bility, and the objection to it was, " that the attention of the witness had not been called to the conversation," and was sustained. ·

It is settled by the case of *Brown* agt. *Kimball*, (25 *Wend. R.*, 259,) that the declarations of witnesses whose testimony has been taken on commission, made subsequent to the execution of the commission, contradicting or invalidating their testimony, cannot be given in evidence ; and that such evidence is always inadmissible, unless the witnesses have been examined upon the point, and an opportunity offered them for explanation or exculpation, and that the rule applies as well where the testimony is taken under a commission as otherwise.

The same doctrine was held in *Stacy* agt. *Graham*, (4 *Kern. R.*, 492.)

The referee also properly allowed the defendant to explain the inconsistency of his testimony with his first answer.

The plaintiff had introduced the first answer in evidence to impeach the defendant's testimony. Clearly, the defendant's mouth could not be closed, and he thereby prevented from showing that it was put in through forgetfulness of the facts and by mistake, and not corruptly.

The other questions in the case were purely questions of fact for the referee upon a conflict of evidence. His finding is conclusive.

IV. There was no sufficient evidence upon which the referee could hold as matter of law, that the defendant was estopped from setting up the defence that the note was made for the accommodation of his brother, and was taken up by him at maturity, and afterwards transferred to the plaintiff.

The only evidence upon which it could be claimed that the estoppel arose, was the answer of the defendant to the plaintiff's demand of payment of the note, made on the 10th or 15th November, 1857, that he " had no money." But clearly this answer was not made with a view of influen-

cing the plaintiff to purchase the note; on the contrary, the plaintiff testified that he then had the note in his possession, and showed it to the defendant, and told him that he (plaintiff) had a note against him.

It is one of the essential elements of an estoppel *in pais*, that the declaration out of which it is claimed to arise should be made with a view to induce the party to whom it is made to act upon it.

The judgment should be affirmed.