Robertson, J.
The defendant’s objection of want of proper parties, is confined to the original contract for building and putting up the machinery in question, and the •additional work and materials furnished by the plaintiffs’ •firm, and does not extend to any subsequent valid undertakings of his. The plaintiffs’reply sets' up, apparently, four defenses to. the claim for damages in the answer, besides a general denial that any damages arose from the cause assigned, to wit: 1st. A cotemporaneous agreement •to extend the time, from the impossibility of completing the work within that fixed therefor. ■ 2d: A subsequent agreement to do so in consideration of extra work to be done by the plaintiffs’ firm. 3d. An acceptance, by the •defendant, of the engines and boilers, when completed, as-.a full performance of the contract; and, lastly, the inclu *181 sion of such damages, in an accounting, and a balance agreed upon after allowing the same, being, the same accounting as that set out in the third cause of action in the complaint.
The Referee has not found, distinctly, with whom the plaintiffs’ firm agreed to do the work in question, nor to whom they gave the exclusive credit; he has, however, found that the defendant employed such firm to do such work, and that the contract in writing, although purporting to have other persons parties thereto, who are named therein, was signed only by the members of the plaintiffs’ firm and the defendant; also, that by a simultaneous agreement, a piece of land was agreed to be taken by the plaintiffs’ firm as part of the price of such work, under a conveyance from the defendant;, and that, in all subsequent transactions, the plaintiffs’ firm dealt wholly with the defendant, and neither dealt with, nor received communications from the persons named in the answer. That the defendant paid part of the contract price by a conveyance of the land agreed upon, and obtained .a credit op, the payment of other installments, by the delivery of his promissory notes therefor, at five and six months without interest ; while he charged his associates with the land and promissory notes as cash paid, and drew interest on the latter, in a settlement with them.
Moreover, there is direct testimony that the defendant is the only person with whom the plaintiffs’ firm dealt in such contract; the land conveyed belonged to a bank, in which the defendant had a large interest and. of which he was president, and in which there is no "proof that any of his associates had any interest; he claimed to give his promissory notes without interest, because the contract was not completed in time. Receipts for such notes are annexed to notices of non-waiver, signed “ George Law & Co;” which speak of “my rights and claims * * under your contract with George Law, &c.”- Such receipts are in favor of the defendant alone, there being no evidence that any such firm as George Law & Co. ever existed. ..The *182 evidence, which is considerable, of dealings exclusively between the defendant and his associates, tending to show that, as between them, the former was considered as the contractor, is, of course, not to be regarded on this question of giving credit, as the plaintiffs’ firm were not parties thereto; although it may be available for other purposes.
. It would be very difficult to say, from the testimony in this case, if the contract was not made exclusively with the defendant, with whom it was made. There is no evidence of any authority given to him to bind any person thereby, except the parties to the original assignment in trust, unless the mere joint ownership by himself, and the parties named in the answer, of the hulls of the vessels, entitled him to incur a debt of $309,000 for machinery to put on board of them, so as to convert them into steamboats. The written contract was signed by the defendant alone, and although, possibly by its form, it may have given all the persons named in it a right of action against the plaintiffs’ firm for a breach of their obligations contained in it, it gave none to them against any one but the defendant. If such contract can be laid aside, and we are at liberty to go into an inquiry as to the persons for whose benefit and by whose authority it was made, Ave shall find, unless we go back to the assignment in trust, that the only authority of the defendant consists of his joint ownership of such hulls. There was no agreement of any kind proved between the defendant, Roberts, Cros- , well, and the two Wetmores, as between themselves, that they would complete the vessels as steamboats for any purpose, although they jointly agreed with others that they would do so, as they also did with others, to build the vessels. If they had so agreed, as between themselves for th.e purpose even of carrying out the contract with Sloo, there might have been such a joint enterprise, and to such extent as to have entitled any of the partners in it to bind the others by á contract to do what was necessary to complete it or carry it on. (Staats v. Howlett, 4 Denio, 559.) If the joint enterprise, (to which the "completion of *183 the vessels as steamboats, by placing machinery therein, was essential,) was that which was entered into by the assignment in trust, the defendant had as much authority to bind Mr. Sloo, who was to own equitably one-half the boats, and be entitled to half the profits, and Mr. McIIvaine, who was to be the owner at law as joint tenant of one-fourth of them, and to be entitled to a yearly salary of $5,000 from their earnings, as he had to bind any of the parties who undertook to build them. In such case both of them would be necessary parties to the suit, while Mr. B. 0. Wetmore would have no interest in it; and if the objection for want of parties, as taken, be governed by the same rules as a plea in abatement, it must be overruled.
But it is said that the joint ownership of the hulls entitled the defendant to equip them as steamboats with proper machinery. I have not been able to find any authority which goes so far as to hold that the joint owners of a hull, which has never been used for a steamboat, are authorized as agents for each other to make contracts to convert it into one, by building machinery and putting it on board, however fitted it may be for such use, or unfit for any other. They are but tenants in common of it, not partners, (Nicoll v. Mumford, 4 Johns. Ch., 522,) and whatever may be their rights as such, to prevent it from being destroyed in the form in which it has been completed, for want of repair, they do not extend to so material and expensive an alteration of its character as placing steam engines on board at the expense of all, without the express agreement between the owners, which would make it a joint enterprise.
The findings of the Beferee, however, and the evidence already alluded to, justify us in arriving at the conclusion as a fact, that exclusive credit was given to the defendant by the plaintiffs’ firm in all the contracts between them. One of that firm testifies that “ he supposed those men- tioned in the contract were interested in the engines, but “ as Mr. Law only signed it, he was the only party with “ whom ive ivere dealing, we considered him good enough.” *184 The contract was signed, by the defendant with his own name only, not professing to act for any. one else, agreeing thereby to pay certain sums on certain days. By a cotemporaneous contract, he agreed to convey land in which he alone was interested, as part of the price of the machinery, without proof of any consent on the part of any associate to take it at that price. Notices were subsequently given by him, signed with his own name, and the addition of “ & Co.,” there being no proof of any person carrying on business in that firm name. In them he speaks of .“.my rights and claims under your contract,” not with us, (which might have identified the firm or partnership intended,) , but with “ George Law, &c.” Upon those notices receipts are given to the defendant for his own promissory notes, running at long dates as cash; and it is proved that he induced the plaintiffs’ firm to give him the credit on those notes, by representing that he had suffered damage by the delay in the work, while he himself was in fact allowed interest on them as cash payments in his dealings with the parties jointly interested in them. All dealings and communications in relation to the subject of the contract are had with him only, he alone had the direction and superintendence of the work, and he finally adjusted the account and promised to pay it. Even without reference to. the doubtfulness of the defendant’s authority to bind any one else, and the probability of the plaintiffs’ firm preferring the certainty of taking one paymaster, whom they thought good, instead of the uncertain liability of others, the Referee would have been warranted in finding, from the facts so proved, that exclusive credit was given to the defendant in all the contracts; and we are entitled to supply that finding, if necessary, to sustain his report. (Grant v. Morse, 22 N. Y. R., 323.)
There is no need of authority to show that exclusive credit may be given even to one of several partners, so as to make him individually liable, as readily as though he had indorsed with his own name a promissory note of the firm, or otherwise guaranteed their responsibility; and *185 more particularly where, as in this case, the form of the contract notified the plaintiffs that there were other parties interested. There is much more reason for making a partnership liable on a contract made for their benefit by a partner in his own name, where he conceals their interest, than where he discloses it. The very fact of taking tho contract in such case in a form to bind him only, is almost conclusive evidence that the other contracting party did not intend to look to the partners. As, therefore, the evidence in this case would be abundant to establish, in an action against the persons named in the answer, a defense by them that the contract was exclusively the defendant’s, and not theirs,- there is no error in the Referee’s conclusion on that point.
Even, however, if no such fact appeared in the case, upon the first written contract, the defendant made himself liable by signing it; there was sufficient consideration for the obligation, and there was no proof that he did not intend to be bound until others signed it, (Parker v. Bradley, 2 Hill, 584,) nor did he sign it, nor was he described in it, in any representative capacity. (Lincoln v. Crandell, 21 Wend., 101.) The rule of law, that his signing it does not prevent the plaintiffs from reaching his principals, where the contract is by parol, (Chitty on Cont., 249; 1 Pars. on Cont., 162; 3 Kent’s Com., [4th ed.,] 41-44,) will not the less make him liable, in such a case, upon it as surety, as much as though he had indorsed their notes.
I am by no means satisfied that the defendant has not waived his objection of non-joinder of parties, by setting up a' counterclaim in favor of the same parties against the plaintiffs. Such a claim would clearly be inadmissible, if the claim of the plaintiffs were against the defendant alone; and yet, if both the objection and counterclaim are to prevail, the defendant can avail himself of an action which he claims cannot be maintained, in order to recover a claim which could only be sued for in an action, by those whose absence as parties to the suit, he alleges makes it defective. The Code does not provide *186 for objections to a counterclaim for want of parties, nor how such a defect is to be taken advantage of, while the .case of Platt v. Halen, (23 Wend., 456,) warrants an offset, notwithstanding a defect of parties. That would prevent the answer from being demurrable, and if it is a good pleading, clearly the defendant would be entitled, on proving the facts contained in it, to judgment therefor, whatever was the fate of the plaintiffs’ claim. A pleading, therefore, which seeks to defeat the plaintiffs’ action, upon facts which alone entitle the party pleading to make the claim which he sets up in such action, is at least an anomaly. The result of a successful objection, for want of parties, is not a total defeat, but only an abatement of the plaintiffs’ action, while the defendant may obtain absolute judgment for the claim, against which, in an action brought directly upon it, the plaintiffs would have a right to offset their claim now in suit.
From the testimony of a clerk of the trustees of the vessels in question, under the assignment from Sloo, it appeared that the defendant was paid by them a certain sum, ($25,588.99,) charged by him in an account, to reimburse him for that sum, as due to the plaintiffs’ firm. At the time, as such witness states, “ It was stated by the “ defendant that that sum was a disputed item^between “ himself and the contractors for the engines of the Ohio “ and Georgia; * * when the matter was settled a “ voucher was to be produced ” from the plaintiffs’ firm; “ he was to procure it,” Another witness (Kirby) testifies, that these vessels, with another, were subsequently transr ferred to another company, to the extent of the interest of the defendant and others therein, for a sum which included the disbursements of the defendant for the construction of the engines and extra work, according to his account rendered to the trustees, he being then their constructing agent. That in June, 1850, during the examination of such accounts, the defendant said: “ that inas- “ much as the construction- had all been paid for, except ■ “ as to that one item, the account had letter le closed, so *187 “far as the trtistees were concerned, and he would assume the “ settlement of that item with Mr. Secor.” Another witness (Mcllvaine) testifies, that the defendant desired such item to appear on the books of the trustees, as part of the cost of the engines, in case the United States Government desired to purchase the vessels, and “ that if this sum was “ never paid to the contractors, he would then pay that part “ of it which belonged to Col. Sloo, under the deed of “ trust to him.” lit the account rendered by the defendant to the trustees, which was carried into their accounts, the disputed item was entered as paid on the 17th of June, 1850. Another witness (Roberts) states, that when such item was spoken of in the examination of the accounts, as having no voucher, the defendant said “ he would “ arrange it,” and it “ was credited to him as a payment by “ him.” The same witness subsequently adds, that the defendant “ said he tvould get the voucher for such item, or “ be responsible for it.” This evidence is amply sufficient to sustain the finding of the Referee, that the defendant accounted with the trustees concerning his disbursements for the construction of the engines and other machinery for the vessels in question, and was allowed the s.um due the plaintiffs’ firm in settlement of such accounting, and paid the same; and that in consideration thereof, he assumed individually to pay the plaintiffs’ firm the amount so due to them.' This would enable the plaintiffs to maintain an action on that promise against the defendant alone.
The defendant being individually liable for the claim of the plaintiffs against him, the next question which arises is whether he had any claim for damages which could be deducted or set off. The work, coneededly, was not finished within the time agreed upon, and if nothing was done to waive the claim for damages therefor, it still remains. A difficulty might arise as to the right to set it off, if the plaintiffs’ claim be against the defendant alone on an individual liability. It might be available as a recoupment in mitigation of damages, but the answer does not claim it as such. (Nichols v. Dusenhury, 2 Comst., *188 283; McCullough v. Cox, 6 Barb., 386.) The parties who were prejudiced by the delay consisted of all the owners of the vessels, and the defendant could not recover and retain such damages as entirely his own on an independent cause of action. In addition to this, the claim in .this case was for a sum certain, and belonged only to the two plaintiffs; the claim for damages was unliquidated, and was against the plaintiffs and two others, who were not parties to the action. It would seem, therefore, that, Although the plaintiffs acquired half their interest by assignment, the defendant would have no right to make them alone liable for his claim for damages, (Vassear v. Livingston, 3 Kern., 248,) by way of counterclaim under the Code. (Dillaye v., Niles, 4 Abb., 253; Ferrerira v. Depew, Id., 131; Davidson v. Remington, 12 How., 310; Van de Sande v. Hall, 13 Id., 458; Spencer v. Babcock, 22 Barb., 327.) It does not appear, also, that the claim would be available by way of set-off. The 112th section of the Code has been held not to affect the substantial rights of assignor and assignee as to set-offs under the Eevised*Statutes, (Beckwith v, Union Bank of New York, 5 Seld., 212, affirming 4 Sandf., 610,) and unliquidated damages are not a subject of set-off. (Brown v. Cuming, 2 Cai., 33; Hepburn v. Hoag, 6 Cow., 613; Wilmot v. Hurd, 31 Wend., 584.) Bat there is sufficient in the record in this case to defeat such claim on the merits.
The Beferee properly disregarded the evidence offered to vary the written contract as to the time of completing the work provided for in it, although the defendant claimed the right to reject such written contract, and to hold the plaintiffs to some other contract made by him on behalf of the owners of the vessel; and if the plaintiffs yielded to the proposition of the defendant to deceive the United States Government, by the insertion of a time within which the work could not be done, they would be justly punished by being made to pay damages for lending themselves to the deception, as the defendant would, for thq same reason, have been, by being compelled to pay *189 the fictitious $30,000 added to the price for the like purpose of imposition.
The facts that plaintiffs and defendant agreed, originally, that the time was fixed in the contract for a different purpose; that the defendant superintended the work while it was going on, and lent the plaintiffs’ firm his notes for $7,500, to be applied on account of the moneys to grow dne under the contract, without objection to the non-completion, on the 29th of June, 1849, over a month after the machinery for one vessel was to have been finished; that a variety of misfortunes interfered to prevent a completion of the work in time; that the plaintiffs worked diligently to complete it; that there is no evidence of the communication by the defendant of such claim for damages to the other trustees; that the defendant took a receipt for his notes, without interest, on a notice of a claim of damages,— although no legal excuse for the delay, each tend to diminish any improbability of the defendant’s having waived a claim for damages, or accepted such credit on the notes, and other deductions from the bills, as a sufficient compensation. The liquidation of such damages and its merger in the account stated between the plaintiffs’ firm and the defendant, after the work was done, and in March or February, 1850, mainly rests upon the testimony of one witness, (Mr. Breasted,) who now has no interest in the action, which is only opposed by that of the defendant. From that testimony it appears that the defendant, on the rendition of the accounts, stated to the plaintiffs that they were behind hand in the work, and he was not going to allow them all the bill; that he was not going to pay wharfage during the delay, and directed them to take out the items complained of and he would settle the bill; those items were taken out as a compromise of the matter, and to close the thing up a new bill was made out, and be said “ he would pay the hills.” The witness testified “ that this was a general settlement and compromise of every thing.” This is corroborated, as to the promise to pay, by the testimony of another witness, (Quintard,) who testifies that *190 the defendant said the bills would be settled after they were regulated; and that of the plaintiff, Secor, who testifies that after the new bills were sent in the defendant said “ it was all right and he would pay the bills.” The first witness (Breasted) testified, also, that on a previous application by him to the defendant, when he gave his notes, the latter said “ that the plaintiffs’ firm would be “behind time, and he therefore'should give notes instead “of money.” If this were an agreement to waive the performance of the contract in time, provided the plaintiffs gave time on the payments, as it might well be construed to be, the defendant would have no claim for damages, 'and might well be disposed to waive any claim for them after-wards in the final settlement. Taking the testimony together, this Court is not at liberty to say that the Referee was not warranted in coming to the conclusion that the defendant, in his anxiety to close the matter up and be able to arrange the accounts and contracts with the trustees, under the original assignment in trust, either waived all claim for damages, or considered the advantages he obtained in the settlement equivalent thereto; as well as for the same reasons took upon himself alone the burden of paying the plaintiffs.
The defendant objects that the Referee erred by allowing the amendment to the complaint containing a new cause of action. By § 272 of the Code, he has the same power as the Court on a trial; and that, by % 173, extends to inserting allegations material to the case, as well as conforming the pleading to facts proved. In this case the substance of the amendment was already in issue,.being contained in the original reply to the defendant’s defense qr set-off of a claim for damages. (Hall v. Gould, 3 Kern., 127.) What was already in the complaint was necessarily part of the amendment, which the court, on application, would undoubtedly have permitted to be added, as the only effect and object of the amendment was to get rid of a technical objection of want of parties. Perhaps a trial is the best place to investigate the good faith of an amendment. *191 (Travis v. Barger, 24 Barb., 627.) The provisions of the Revised Statutes which are not superseded by the Code, (Perry v. Tynen, 22 Barb., 137,) give full power to make such amendment, (2 R. S., 424, § 1,) besides this, the defendant waived the objection, by amending his answer. I think, however, the amendment was within the discretion of the Referee, and was properly permitted.
Many facts found in this case by the Referee, being immaterial to the issue or the result, may be rejected without injury, particularly where, as in this case, he states those upon which he exclusively relies to justity his final conclusions of law that the plaintiff is" entitled to recover; he puts that solely upon the two accountings which he finds to have taken place, as matter of fact, and that, as matter of law, they excluded the objections of the non-joinder of parties and the claim for damages.
Several exceptions were taken to the admission of testimony, claimed to have been improperly admitted, none of which are tenable. Proof of the non-payment of the $30,000, at the date of the contract, was relevant for several purposes. A receipt for the amount was produced by the defendant; no charge was made by him for it in his accounts rendered to the trustees, and without an explanation there might be some embarrassment as to the amounts claimed. I do not find in the evidence any attempt to throw any imputation upon the defendant, of an improper motive for such fictitious addition, except that to which the simple fact gives rise; although the defendant did offer evidence casting the imputation of primary guilt on the plaintiffs, without removing his own complicity in it. Attempts to introduce improper evidence, which were defeated by its exclusion, could hardly affect the mind of the Referee unfavorably to the defendant. The fact that the other trustees were ignorant that the defendant obtained credit on the installments by giving his notes, or conveyed land instead of paying money, was important to show that he considered the contract entirely his own, to deal with as he thought proper, and that the arrangement of paying *192 in land or giving time, both on the contract and the payments, was entirely a matter of his own and for his own benefit. The consideration of the release from Sloo to the defendant was admissible, in the discretion of the Referee, on a cross-examination, to test the accuracy of the witness’ previous statements. The statement of the inconsiderable character of the work done by the plaintiffs on another vessel, was rendered proper by the attempt on the defendant’s part to prove that the undertaking of such work by the plaintiffs, had interfered with the work to be done by them under the contract in controversy, and to diminish the damages which might be claimed for a willful delay. ' ■
There being, therefore, no errors of law in the decision of the Referee, and there being sufficient evidence to jus-tify the facts expressly found by him, and all other facts •necessary to sustain the judgment, it must be affirmed with costs:
Bosworth, Ch. J., and Morcrief, J., agreed in affirming the judgment.