By the Court.—Davis, J.
It seems quite apparent from the affidavit of the referee in this ease that the conversation with Mr. Clews of which he speaks, must have taken place after the cause had been summed up and submitted to him for decision. He says that he said in substance to Mr. Clews that he (the referee) had not at all come to any conclusion about the case as yet, but that there were matters in evidence in the case which led him to believe that if he did give judgment for the defendants it would necessarily be for a large amount.” It is not at all likely that an intelligent referee would have thus spoken of the probable or possible conclusion and judgment to which he had not “ as yet” arrived upon the matter in evidence before him until after the case had been, submitted for his final consideration. Mr. Clews testifies to two interviews between the referee and himself, in one of which the sum of thirty-five thousand dollars was suggested as a proper amount to be paid by plaintiff. He says that the second interview was after the cause had been summed up, but he is uncertain at which interview the amount he names was mentioned. The referee states that on the occasion when he recollects to have called on Mr. Clews he has some recollection of mentioning some sum as having been discussed or spoken of by defendants’ counsel, or some of them, and he thinks that sum was -thirty-five thousand dollars. Collating the affidavits of these gentlemen on this point together, I think there is no difficulty in concluding that the conversation narrated by the referee in fact took place after the case was finally submitted to him.
This fact completely answers the objection that the plaintiffs should have moved sooner for the alleged misconduct of the referee.
*231 They took no step in the progress of the case which can be asserted as a waiver, for at that stage there was no opportunity to take any; and the first occasion when a charge of laches could have arisen against them is the one when they make this motion, and thereby, of course, repel all idea of acquiescence.
It was suggested by the counsel for the appellants on the argument that the alleged irregularity arising from the conduct of the referee was not sufficiently pointed out in the notice of motion.
But the allegations on which it is based are contained in plaintiffs’ affidavits, and are sought to be distinctly met by the affidavit on the part of the defendants. We must assume, therefore, that this point of formality was hot ^ made in the court below, because, under the circumstances, that court would doubtless have allowed the motion to stand over for an amendment of the notice, or, at most, have denied it without prejudice. We do not feel ourselves bound to entertain such an objection, where it is apparent that the motion was discussed and decided in the court below as though the notice was strictly regular and sufficient.
The question, therefore, on this branch of the motion is substantially, whether the court ought to interfere to set aside the report of a referee who, after the case is submitted to him for decision, approaches the party against whom judgment is finally rendered, in the manner and for the purposes shown by the affidavit of the referee himself in this case. This question is quite fully discussed in the opinion of Fabcher, J., at special term, and to his views and conclusions therein we do not hesitate to give our hearty assent.
It may be commendable in referee or couft, in presence of both parties, to recommend and urge a settlement between themselves of their litigation, but for an officer occupying, as to the questions of fact in a *232 cause, the position of jury, to be the bearer to the party afterward heavily beaten by him of a proposed sum as having been discussed or spoken of by his antagonists’ counsel, with the intimation that there were matters in evidence in the case which led him to believe that if he did give judgment for defendants it would necessarily be for a large amount, and that “it might be well to think the matter over in that light,” is to assume a. relation different from that which any duty enjoins.
It is not difficult to see that the weak human nature of some referees might lead them by their subsequent judgment to show the party who had rejected such friendly overtures the folly of not heeding salutary advice; and since some might fall into such a temptation, the rule should be inflexible that permits none to tread the path to it.
We think it improbable that the referee in this case was affected by the mistake he made ; but the interests of justice demand that the general rules designed to prevent the suspicion of impurity in its administration should be rigidly adhered to. For these reasons, we think the order appealed from should be affirmed.
It is questionable whether the decision of a referee amending pleadings in the course of a trial, can be reviewed by a motion at special term to set aside his report, or because, after such an amendment is granted, the parties fail to put the pleadings in proper form. But it is not necessary to pass upon these questions. We prefer to put our decision distinctly upon the ground already considered.
Isobaham, P. J., concurred.
Order affirmed, with costs.
* Upon this point the judge at special term held that,
1. The referee had not power on the trial to allow an amendment *233 of the answer amounting to a new defense, of a nature different to that before him for trial.
2. When leave to amend is granted, the amendment should be incorporated into the pleading, and the amended pleading should be served on the adverse party.
The facts in respect to the answer, and the opinion on this question, were as follows:
The defendant’s answer to the complaint was served on February 18, 1863, containing two defenses. The first was to the effect that numerous errors existed in the plaintiffs’ account, and the second defense averred that the sales of the stocks, &c., for’the defendant’s account were unlawful, and that the purchases made to cover short sales were invalid, by reason whereof the defendant owned he had sustained damage in a large amount, and equal to the amount claimed in the plaintiffs’ account, tin November 15, 1864, Bainbridge commenced an action against Livermore, Clews & Co., to recover damages for the alleged unlawful sale and conversion of his stocks, gold and demand notes, alleging an improper sale and conversion thereof on May 27, 1863, and in that action he claimed damages for fifty-two thousand dollars. It appears that on January 24, 1865, a motion was made in the original action, by the counsel for the defendant Bainbridge, to withdraw the second defense above mentioned. The referee in his letter of March 2, 1870, to Mr. Hewitt, the defendant’s attorney, states:—“ The motion made by you in this case to withdraw your counter-claim, the decision of which was received at the time, I have decided to grant, not seeing any prejudice to arise in the action to the plaintiffs herein.” Thereupon an affidavit was made on March 3, 1870, by the defendant’s attorney and used in a motion on the cross action against Livermore, Clews & Co., in which he deposed “ that the action now pending before John P. Crosby, referee, does not involve the issues contained in this action; that about the time of the commencement of this action this deponent moved before Mr. Crosby, the referee, to withdraw the second and separate defense therein; that the question of the right of defendant to withdraw said defense was submitted to said referee, and after due deliberation was decided in favor of the defendant in that action.” The referee, by a letter to one of plaintiffs’ attorneys, dated March 3, 1870, informed him of the withdrawal of the said second defense. It appears by the motion papers, that the withdrawal of the continuation or second defense thus referred to was made for the purpose of some supposed benefit to Bainbridge in his action against Livermore, Clews & Co., and the fact of said withdrawal was made prominent on a motion to stay proceedings in that action, which was decided on March 7, *234 1870. At some time thereafter—but when, the papers before me do not disclose—the referee entertained and granted a motion made by the defendant’s counsel “to amend the answer, so as include an allegation of damage to defendant by reason of the unlawful acts of the plaintiffs, as set forth in the second defense, to the amount of $130,000, and a demand of judgment for that amount, with costs.” This motion was objected to, without avail, by the counsel for the plaintiffs, and the referee on that new defense has reported against the plaintiffs, and ordered a judgment for one hundred and twenty thousand dollars, and costs. No actual amendment was at the time made by the formal drawing or service of such amended answer, although the judgment roll in this action contains what purports to be such amended answer. When it was first actually drawn is not explained.
The question here arises whether the referee had power to order such an amendment. It seems plain that the referee exceeded his power. When the amendment was allowed there was no defense of the nature of a construction contained in the issue which could be enlarged by such an amendment as was allowed, nor was it possible for the referee to allow such a construction to be introduced in the answer, as it then stood, without permitting a substantial change of the defense. In effect the amendment amounted to a new defense of a'nature different to that contained in the answer, which it has often been held is improper to be allowed on the trial, either by a judge or a referee (Ransom v. Wetmore, 39 Barb., 104 ; Johnson v. McIntosh, 31 Id., 272 ; Walter v. Bennett, 16 N. Y., 250 ; Whitcomb v. Hungerford, 42 Barb., 185 ; Ford v. Ford, 53 Id., 525 ; S. C., 35 How. Pr., 321). An amendment which proposes a new cause of action or defense should not be allowed. There is ground for the supposition in this case that the amended answer, as it now appears on the judgment roll, was not prepared until after the decision and report of the referee. It is asserted by the plaintiffs’ counsel that they never saw it till it appeared on file in the roll. Had it been competent for the referee to allow the defendant the privilege of making such an amendment, the answer should have been drawn and verified" and served as amended. Then an opportunity to reply to it would have been afforded to the plaintiffs. Perhaps the statute of limitations or other reply would have been interposed to the counter-claim. In Johnson v. McIntosh (supra), the referee admitted proof of a defense not asserted in the answer, and on motion after trial the special term allowed the answer to be amended to cover the defense. But the judgment was reversed and the amendment pronounced to be improper. So in Woodruff v. Dickie (5 Robt., 619 ; 31 How. Pr., 164), it *235 was held that an amendment is the correction of some error or mistake in a pleading already before the court, and there must be something to amend by, whereas the insertion of facts constituting a new cause of action or defense would be a substantial pleading, and not an amendment of an existing pleading. It was further said in that decision that there are no cases which furnish a satisfactory reason for holding such an amendment to be within the power of the court to grant. It was not necessary that Bainbridge should set up, by way of counter-claim, his supposed demand against the plaintiff. He was at liberty to bring a cross action for the same (Peck v. Minot, 4 Robt., 323; Lignot v. Redding, 4 E. D. Smith, 285 ; Gillespie v. Torrance, 25 N. Y., 306 ; Collyer v. Collins, 17 Abb. Pr., 468). He elected to abandon and withdraw his counter-claim and to bring a cross action on his alleged demand. That action is still pending. After he had thus made his election it was not competent to allow a further amendment of the answer in the original action by reinstating the former abandoned counter-claim in an amended form while the cross action was pending. The law does not favor double vexation for the same cause of action (16 Barb., 461 ; 2 Duer, 611 ; Mills v. Block, 30 Barb., 549 ; 15 Abb. Pr., 191). "The plaintiffs proceeded to move to set aside the referee’s report for irregularity before the entry of the judgment. The order to show cause permitted the entry of the judgment without prejudice to the motion. It is, therefore, proper to consider on this motion the question of the power of the referee" to allow the amendment without remitting the plaintiffs to an appeal from the judgment. I am clearly of the opinion that the referee had no power to make the amendment on which the enormous judgment in this case is founded, and that his report, for that reason, should be set aside.
In Hochstetter against Isaacs (New York Superior Court, Special Term, February, 1873), it was held, on a review of the authorities, that though the referee has not power to allow an amendment changing the cause of action or defense, leave may be obtained by suspending the trial and moving on notice at special term. And the like motion may be made, where the referee, on the ground of supposed want of power, refuses to grant an amendment which he might have granted.
The cause came before the court on a motion for leave to amend answer during the pendency of a reference to determine the issues.
Freedman, J.
Referees now have the same power to grant adjournments "and to allow amendments to any pleadings, and to the *236 summons, as the court upon the trial, upon the same terms and with the like effect (Code, § 373). As the subject of payments has been introduced into this case by the complaint and put in issue by the answer, the proposed amendment of the answer, by which it was sought to set up the precise amount paid, being material to the case, should have been allowed by the referee upon terms.
As the plaintiff insisted, however, that the referee has already passed upon this question, and that his disallowance of the amendment, if reviewable at all, can only be reviewed on appeal from the judgment, it becomes necessary to inquire into the power of the court to interfere on motion at this stage of the proceedings.
In Woodruff v. Dickie (5 Robt., 619), the majority of the general term of this court were of the opinion that “ referees are no longer officers of, or under the control of the court. They become by appointment an independent tribunal, having such powers as are given by statute, and their decisions are reviewable only on appeal from their judgments. . . . That as regards the allowance of amendments of pleadings, a judge presiding at the trial of a cause with a jury, possesses all the powers of the court, and qan allow them in the same manner and with the like effects as the court sitting in any other organized form. That the words used in section 373, giving to the referees the same powers “as the court upon such trial,” seem unnecessary, inasmuch as the court has no other, greater or less power, upon the trial, in respect to amendments, than at special term, or in bank, or otherwise.”
These doctrines, which, however, were not necessary to the decision of that case, the supreme court refused to follow. In Union National Bank of Troy v. Bassett (3 Abb. Pr. N. S., 359), the general term of the third district held that the court at special term, during the pendency of a reference, has power to permit a defendant to amend his answer by setting up the defense of usury, although the original answer did not allege it. And in Ford v. Ford (35 How. Pr., 322 ; S. C., 53 Barb., 525), the special term set aside an amendment allowed by the referee, on the ground that he had not the power to grant it at the trial, and that the motion should have been made to the court at special term.
In Bennett v. Lake (47 N. Y., 93), the court of appeals, instead of entertaining the appeal and reversing so much of the order appealed from as granted relief in addition to that given by the referee, dismissed the appeal, upheld the power of the court as well as that of the referee, and decided that the allowance of the amendment by the referee and the granting of additional relief to the same party by the *237 court upon a review, on motion of the other party, of the action of the referee, were both discretionary.
This last decision must be deemed to overrule in effect the doctrines advanced in Woodruff v. Dickie; and as I am therefore at liberty to disregard them, I have, after a careful examination of all the authorities, arrived at the conclusion that the rule has been correctly stated by Mr. Justice James in Ford v. Ford (supra), namely, that although on the trial neither a referee nor the court has power to allow the amendment of a pleading by inserting a new cause of action or a new defense, such amendment may be obtained by suspending the trial and applying on notice to the special term. The application should be made at special term, because the adverse party has not only a right to answer or reply to such amended pleading, but should also have a reasonable time within which to prepare for opposing the motion.
From all this it follows that where the allowance or disallowance of a proposed amendment is in the discretion of the referee, the exercise of that discretion, even if reviewable on appeal, will not be interfered with by the court on motion. And this is the precise question determined in Woodruff v. Dickie (supra). But where the referee either has no power, or refuses to interfere because of a supposed want of power, the trial may be suspended and a motion made to the court at special term.
As in this case, plaintiffs’ counsel has stated upon the argument, that the referee had based his decision upon his supposed lack of power, the motion is granted upon payment of ten dollars costs, and without prejudice to the proceedings already had; and with leave to plaintiff to amend his complaint if he should be so advised.
On this question of amendment compare Bouman v. De Peyster (2 Daly, 203) ; Van Ness v. Bush (14 Abb. Pr., 33) ; Secor v. Law (9 Bosw., 163) ; Hodges v. Tennessee Ins. Co., (8 N.Y. [4 Seld.], 416) ; Pardee v. Foote (9 Abb. Pr. N. S., 77) ; Wright v. Delafield (25 N. Y., 266, reversing 23 Barb., 498) ; Johnson v. Oppenheim (11 Abb. Pr. N. S., 449).