---

(4 Misc. Rep. 374.)

## In re MUNZOR'S ESTATE.

### (Surrogate's Court, New York County. July, 1893.)

**1. ADMINISTRATOR—ACCOUNTING—BUSINESS OF INTESTATE.**
Where an administrator continues the business of his intestate, it becomes his individual business, though the estate is entitled to the profits; and therefore the administrator, on accounting, need not state the details of the business, or produce vouchers for the disbursements thereof.

**2. SAME—AMENDMENT OF ACCOUNTS.**
A referee before whom a proceeding to settle an administrator's accounts is pending may allow an amended account to be filed at the hearing so as to omit the details of a business in which decedent had been engaged, and which the administrator continued, and to state the profits as a single item.

**3. SAME—PROFITS.**
Where it is sought to charge an administrator with profits of a business in which he has used the money of the estate, the burden of proving such profits is on those who make the charge.

Accounting by the administrator of William Munzor, deceased. The matter was referred, and objections are now made to the report of the referee. Modified.

James L. Bishop, for the administrator.

Robert Bonynge, special guardian, for John William Munzor and Jacob Frederick Munzor, infants.

Charles Putzel, for contestants.

RANSOM, S. Exceptions to the report of a referee appointed herein to hear and determine. An account was filed by the administrator on June 5, 1891, by which, among other things, it ap-

peared that the administrator, without having obtained the per-
mission of the court or of the parties in interest, and without any
express direction to that effect in the will of decedent, had con-
tinued the machinery business formerly carried on by decedent for
several years after his decease. In said account the administrator
set forth in detail the receipts and disbursements of said business.
Objections were filed to the account. The matter was ordered to
a reference. The testimony introduced amounted to some 600 type-
written pages, when it became evident that the administrator could
not produce vouchers for the greater part of the disbursements con-
nected with his conduct of said business. His counsel thereupon
moved before the surrogate for leave to file an amended account.
This motion was denied on the ground that the motion should be
made before the referee, who should fix the terms upon which the
application should be granted, if it were granted. The motion was
renewed before the referee, and leave to file an amended account
was granted, an exception being taken to the ruling of the referee
by counsel for the contestants. An amended account was then
filed, on June 4, 1892, which omitted all details as to the conduct of
the business in question, merely setting forth, as one item of ad-
ministrator's amended account, profits amounting to $1,223.43, with
which he charged himself and credited the estate. Objections were
then filed to the amended account, and the proceedings continued
before the referee. The referee, in his report, finds that the busi-
ness so conducted by the administrator was his individual business,
although he was obliged to credit the estate of decedent with what-
ever profit he derived therefrom, he having used the funds of de-
cedent's estate for the purposes of said business, but that he was
not bound to prove in detail the receipts and disbursements con-
nected therewith, the burden of such proof being upon the contest-
ants, who were seeking to charge the administrator with a larger
amount of profits arising from said business than the administrator
had stated in his account; that, contestants having failed to present
proof that greater profits were realized by the administrator from
said business, he is only chargeable with the sum of $1,580.43, (an
amount slightly in excess of the sum admitted by him to have been
so earned,) or, at the option of contestants, with the balance of as-
sets in his hands after deducting disbursements and necessary ex-
penses of administration, with interest thereon at the rate of 6
per cent. from January 1, 1885. Numerous exceptions to the re-
port were filed by counsel for the respective contestants, most of
which bear directly upon the question upon whom the burden of
proof rested under the amended account to prove the details of
receipts and disbursements of the business conducted by the ad-
ministrator with the funds of the estate. On this point the ruling
of the referee is correct. The business, as the business of the de-
cedent, ceased at the time of his death. All that remained belong-
ing to his estate was the stock, good will, fixtures, leasehold, etc.,
which it was the duty of the administrator to dispose of at the earli-
est opportunity. In continuing the business the administrator did
so individually, assuming individually all risks appertaining to said

business. The estate was not chargeable with the losses incident thereto, and did not run any of the ordinary risks of such a business. As a penalty, however, for departing from the line of conduct laid down for administrators, the administrator is forbidden to reap any benefit or profit from such personal use of the estate funds, and is required to credit the estate of decedent with all profits resulting from said business. This rule is clearly established in the following cases:

"It is well settled that debts contracted by an administrator in continuing the business of the intestate would not bind the estate. Willis v. Sharp, 113 N. Y. 591, 21 N. E. Rep. 705. * * * Nor would the product belong to the estate. The title or possession would not be in the estate, but in the party who ran the business." Kenyon v. Olney, (Sup.) 15 N. Y. Supp. 417.

"Protected from loss and from liability at all times, the estate is interested in the business only to the extent of its profits, and in them, not because it is the business of the estate, but because the administrator is using the property of the estate in a way he is not authorized to do, and consequently is required to account for all the profits made by its use. It follows from this that the expenses incurred in carrying on such business are not debts of or claims against this estate, nor are they 'charges or expenses of administration,' within the meaning of the probate law. The items of increase and items of expense of such business are not matters which come within the purview of the itemized account of an administrator as such. * * * He is bound to report to the court, as money or property coming into his hands as administrator, the true net gains or profits derived from the business, in money or kind, but the detailed account of the management or conduct of the business is no part of his account as administrator." Estate of Rose, 80 Cal. 166, 22 Pac. Rep. 88.

The business, therefore, being the business of the administrator individually, and not of the estate, the burden did not rest upon him to furnish vouchers or proofs in detail of the receipts and disbursements of the business, under section 2734 of the Code, which section is applicable solely to the disposition of the funds of the estate. Primarily, the administrator is chargeable only with assets of the estate which came into his hands, and such interest as might have been earned thereon. If he has mingled the funds of the estate with his own, or used them for his own purposes, he is chargeable with interest on the same, or, at the option of the parties in interest, with whatever profit has resulted from such use of the funds, but the burden of proving negligence or misuse of funds on the part of the administrator clearly rests upon those seeking to charge him with interest; and the same rule is applicable where they seek to charge him with profits. There is no presumption that he has derived profits from the use of the funds in his own business, and, to charge him with them, the contestants must clearly establish them. Failing to do so, they can only charge him with interest on the principal fund because of his negligence or wrongful use of the same, or with such amount of profits as he admits having earned.

An exception was also taken to the ruling of the referee allowing the administrator to file an amended account, it being contended by counsel for contestant that the referee had no power, under the order of reference, to allow such an amendment, and, even if he had such power, it was improperly exercised after the case had proceeded so far, the amended account which was allowed making

practically a new issue.   There can be no question as to the power of the referee to grant such an amendment as the surrogate himself might grant upon a trial.   Code Civil Proc. §§ 2538–2546; Estate of Odell, (Surr.) 4 N. Y. Supp. 463; Estate of Williams, Surr. Dec. 1888, 308.   There seems also to be no limitation of the power of the court to allow an amendment of the pleadings, even at the trial, where justice requires the same, (Code, § 723; Van Ness v. Bush, 14 Abb. Pr. 33,) provided the amendment does not create a new cause of action.   In Avery v. Railroad Co., 106 N. Y. 143, 12 N. E. Rep. 619, the syllabus is as follows:

"Plaintiff's complaint simply alleged that he was in possession of the hotel property.   On trial, defendant moved for a dismissal of the complaint on the ground that it did not show plaintiff to be a party or privy to any covenant in the deeds.   The court, on motion of the plaintiff, permitted an amendment of the complaint setting up the lease to plaintiff.   Held no error."

This would seem to have been fully as serious and radical an amendment as the one in issue.   In an accounting before a surrogate, the accounting itself is the subject-matter of the proceeding, and any amendment may be allowed which does not include a transaction subsequent to the return day of the citation.   In Price v. Brown, 112 N. Y. 677, 20 N. E. Rep. 381, "where, upon trial before a referee of an action to recover a balance of trust funds alleged to have been in the hands of defendant's testator at the time of his death, the referee allowed an amendment of the complaint by striking out a credit given by mistake, and increasing the amount claimed, and where the judgment entered upon the referee's report was reversed, and a new trial granted," it was held that the amendment did not introduce a new cause of action, and was within the discretion of the referee.   This disposes of the exceptions taken by the widow contestant, none of which are of any value.

The exceptions taken by the special guardian of the infants in interest are five in number, and all have reference to the single question upon whom the burden of proof rested under the amended account to show the details of receipts and disbursements of the business carried on by the administrator.   This question has already been disposed of, and the exceptions taken by the special guardian are without merit.

There remain to be considered the two exceptions taken by the administrator to the report of the referee.   They are as follows:   First. To so much of the report as finds the administrator chargeable with the sum of $2,050.59, collected November 1, 1884, from George Ehret, and not included in the inventory, and to findings 49 and 12, which relate to the same point.   It appears from the testimony of the administrator upon cross-examination, at page 1025, that this particular item was included among the receipts in the calculation from which the administrator arrived at the amount of the profits with which the estate should be credited.   This testimony was brought out by counsel for the special guardian, and no evidence of any kind was introduced contradicting the same.   It appearing, therefore, that the estate has already, in the estimate of profits, been credited with this amount, it was error on the part of the referee to again

charge the administrator with the same item, and the exception taken by the administrator to such finding of the referee was well taken. The report of the referee should be modified in that respect, and the administrator should not be charged with such amount. Second. The administrator excepts to the refusal of the referee to allow him the credit of $2,558.16, alleged by the administrator to have been loss on the lease of the premises in question from the date of the death of the decedent up to the time of the sale of the business, and to finding 53, which relates to this point. The referee having already found that the administrator was negligent in not sooner disposing of the business and leasehold belonging to the estate of decedent, and this loss being incident to such negligence, the finding of the referee is correct, and the exception is overruled. It is also contended that the referee erred in charging the administrator with $4,000, the value of the good will of the business and the leasehold, over and above the items set forth in the inventory. It is claimed by the administrator that the sale of the fixtures, etc., for $10,000, included the good will of the business and the value of the leasehold. This claim is not supported by the evidence, for in both the original and the amended accounts a detailed statement appears of the articles which were sold for $10,000, and it is clear that the good will was not one of such items, nor was the leasehold. Sufficient evidence was introduced as to the value of the good will and the leasehold to justify the finding of the referee. The report, as thus modified, is confirmed.